IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| RIGOBERTO SOTO JIMENEZ, <br><br> Petitioner-Appellee, <br><br> v. <br><br> MATTHEW ISIHARA, <br><br> Appellant, <br><br> PAMELA BONDI, *et al.*, <br><br> Respondents. | No. 26-1327 |

**MOTION TO DISMISS FOR LACK OF APPELLATE JURISDICTION**

Petitioner-Appellee Rigoberto Soto Jimenez moves to dismiss this appeal for lack of jurisdiction. *See* Circuit Rule 47A(b).

**INTRODUCTION**

Special Assistant United States Attorney Matthew Isihara—in his individual capacity—appeals the District Court's order that held him in coercive civil contempt until he complied with the court's direction to return Mr. Soto Jimenez's identity documents following Mr. Soto Jimenez's release from Immigration and Customs Enforcement (ICE) detention. Isihara promptly coordinated with ICE to have Mr. Soto Jimenez's identity documents overnighted back to him before the $500-per-day fine imposed by the contempt order began to accumulate. The

1

District Court accordingly held that Isihara had purged his contempt by complying with its order and never collected the sanction it had threatened.

Mr. Soto Jimenez has no concrete stake in Isihara's appeal now that he has his identity documents back. But as the petitioner below, Mr. Soto Jimenez is the appellee in this Court, and "[e]very litigant has an obligation to bring jurisdictional problems to the court's attention." *O'Donnell v. Saul*, 983 F.3d 950, 955 (7th Cir. 2020) (quoting *Espinueva v. Garrett*, 895 F.2d 1164, 1166 (7th Cir. 1990)). That obligation—which Mr. Soto Jimenez's counsel shares[1]—compels Mr. Soto Jimenez to move to dismiss Isihara's appeal, because Isihara does not have standing to invoke this Court's jurisdiction.

"A long line of precedent holds that once a civil contempt order is purged, no live case or controversy remains for adjudication." *In re Grand Jury Subpoena Duces Tecum*, 955 F.2d 670, 672 (11th Cir. 1992) (quoting *In re Campbell*, 628 F.2d 1260, 1261 (9th Cir. 1980) (per curiam)). That long line of precedent includes this Court's cases. Isihara is no longer in contempt, he never paid any fine, and he accordingly has suffered no concrete injury traceable to the District

---

[1] *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 593 (2004) ("[B]y whatever route a case arrives in federal court, it is the obligation of . . . counsel to be alert to jurisdictional requirements."); *I.L. v. Alabama*, 739 F.3d 1273, 1284 n.6 (11th Cir. 2014) ("We remind counsel that, as officers of the court, they have a duty to raise alleged defects in subject-matter jurisdiction when they first become apparent . . . .").

2

Court's coercive civil contempt order that a favorable opinion from this Court can redress. Any inchoate fears Isihara may have about potential future consequences or embarrassment Isihara may feel at the criticism the District Court levied in seeking to compel compliance do not, without more, constitute an Article III case-or-controversy.

If, however, the Court wishes to hear the merits, it should consider appointing an *amicus curiae* in support of the judgment below. Mr. Soto Jimenez took no position below on whether Isihara should have been held in contempt, and Mr. Soto Jimenez maintains that non-position in this Court. But the Court can—and should—short-circuit the need for *amicus* participation by dismissing the appeal now, before merits briefing.

## BACKGROUND

Mr. Soto Jimenez is a Mexican citizen and resident of Big Lake, Minnesota who has lived in the United States since 2018. ECF No. 1, at ¶ 14.[2] He does not have a final order of removal, is married to a lawful permanent resident, and has a United States citizen child who is autistic and requires special services that Mr. Soto Jimenez participates in. *Id.* ¶¶ 15-16. Mr. Soto Jimenez has a pending Form I-130, Petition for Alien Relative, filed by his lawful permanent resident wife. *Id.* ¶ 15.

---

[2] All ECF citations are to the District Court docket.

3

ICE arrested Mr. Soto Jimenez on January 14, 2026 at work as part of "Operation Metro Surge." *Id.* ¶¶ 17-18. ICE spirited Mr. Soto Jimenez off to its Camp East Montana Detention Facility in El Paso, Texas, *id.* ¶¶ 5, 8, and he petitioned for habeas corpus in Minnesota, ECF No. 1. Mr. Soto Jimenez's petition explained that his detention violated the Immigration and Nationality Act, the Fifth Amendment's Due Process Clause, and the Administrative Procedure Act. *Id.* ¶¶ 30-46.

Mr. Soto Jimenez's filed his petition on February 2, 2026, and it was assigned to Isihara, an Army judge advocate general detailed to the Minnesota U.S. Attorney's Office and appointed as a Special Assistant United States Attorney. *See* Hrg. Tr. 16:11-13, 25:14-18. Isihara did not enter an appearance, *id.* at 20:13-23, and the Government's February 5 deadline to answer the petition came and went without a filing, ECF No. 4.

The District Court accordingly held that the Government had waived any objections to the petition and ordered Mr. Soto Jimenez released. ECF No. 5. The District Court's order specified that the Government was to release Mr. Soto Jimenez in Minnesota by no later than 5 p.m. on February 13 and that Mr. Soto Jimenez be released without any conditions and with all of his property. *Id.* at 3. The Government was also directed to file a status report certifying its compliance with the court's order by 3:00 p.m. on February 17. *Id.*

None of that happened. Mr. Soto Jimenez's counsel sent the District Court's order to the general outreach e-mail box for the El Paso ICE field office, emphasizing that the order required Mr. Soto Jimenez to be released in Minnesota with all of his property. *See* ECF No. 8; ECF No. 10-1. But ICE instead released Mr. Soto Jimenez in El Paso without his Minnesota driver's license, Minnesota instruction permit, and Mexican consular identification card. ECF No. 8 at 1. Mr. Soto Jimenez's counsel contacted two supervisors at the El Paso field office, as well as Isihara, who said he would "circle back with you later this afternoon." *Id.*; ECF Nos. 10-2; ECF No. 10-3 at 1-2. But the supervisors did not respond and Isihara never circled back. ECF No. 8 at 1; *see also* Hrg. Tr. 8:10-15, 12:20-13:5, 27:14-29:5. Mr. Soto Jimenez's counsel secured him a flight to Minnesota using donated frequent-flyer miles, but it didn't leave until the day after his release, forcing him to spend the night in a shelter. ECF No. 8 at 1; Hrg. Tr. 10:19-20, 44:8-11.

Mr. Soto Jimenez's counsel continued to try to follow up with Isihara about the return of Mr. Soto Jimenez's property but received no response. ECF No. 8 at 1; ECF No. 10-3 at 1. Out of options, Mr. Soto Jimenez notified the District Court about the Government's noncompliance with its order. ECF No. 8. In response, the District Court ordered the Government to appear at a hearing and show cause why it should not be held in contempt for its noncompliance with the Court's

release and return order. ECF No. 9. At the hearing, Isihara admitted that he was assigned to Mr. Soto Jimenez's case the day it was filed; that he received notice of the District Court's release and return order the day it issued; and that he had not taken the usual steps to notify ICE of the release and return order and its terms until the day of the show-cause hearing. *See* Hrg. Tr. 16:11-13, 25:14-18, 24:21-25, 25:8-13, 26:16-27:13, 29:3-5.

Isihara's only explanation for the repeated failures to comply with the District Court's order—even after being notified of it from multiple sources—was that the U.S. Attorney's Office was "underresourced," that he had handled "anywhere from 126 to 129" cases over the last month, and that Mr. Soto Jimenez's case had "slipped through the cracks." *Id.* at 24:6-8, 46:7, 46:23-25, 68:20-23. Isihara's supervisor, the U.S. Attorney's Office's Civil Division Chief, "appeal[ed] to the Court's good graces . . . to the extent that there is any opportunity to exercise discretion." *Id.* at 67:12-14. Isihara likewise asked the Court to "take into consideration the fact that our overall error rate . . . is low." *Id.* at 69:21-23. But besides the Civil Division Chief saying that he was "not sure . . . whether the exact elements of contempt may have been met here," *id.* at 67:14-15, and Isihara stating that he was not engaging in "any willful attempt to defy the Court," *id.* at 47:8-9, neither the Government nor Isihara contended that a coercive

civil contempt sanction would be improper. Mr. Soto Jimenez, meanwhile, took no position on whether contempt was appropriate. *Id.* at 65:20-21.

The District Court held Isihara in coercive civil contempt, finding that he was "primarily responsible for the ongoing noncompliance with the Court's" release and return order. *Id.* at 72:18-19. The court explained that its contempt order was "imposed *to force the Government to comply* with the Court's order" and that "willfulness is not a requirement to impose coercive civil contempt." *Id.* at 72:20-22, 73:14-19 (emphasis added). After considering the relevant factors, the court ordered that Isihara pay a $500 fine for each day that Mr. Soto Jimenez did not have his identity documents beginning the day after the hearing, such that if Mr. Soto Jimenez's documents were "returned to him tomorrow, no fine will be imposed." *Id.* at 74:1-16. The court gave the Government a chance to be heard following its oral order, but neither the Civil Division Chief nor Isihara objected to it. *Id.* at 75:1-3.

The Government overnighted Mr. Soto Jimenez his identity documents and afterwards filed a certification of compliance confirming that it did so. ECF No. 21. The Government stated that "while Federal Respondents dispute and do not admit that attorney Matthew Isihara's conduct amounted to contempt of court, compliance with yesterday's order has now occurred and the coercive fine should be discontinued." *Id.*

7

The District Court agreed. It recognized that "Isihara has purged his contempt, so no fines will be imposed on him." ECF No. 23 at 1. The court also "empathize[d]" with the challenge the U.S. Attorney's Office faced and expressed its "immense respect for the dedicated attorneys of" the U.S. Attorney's Office "who live out its vital mission of doing justice." *Id.* at 7-8. But the court used its order to remind the Government that it would "not tolerate . . . what happened here: disobedience and radio silence." *Id.* at 9.

Isihara appealed the District Court's contempt citation in his individual capacity. ECF No. 25. Isihara's notice of appeal, in part, complains that the District Court "imposed a coercive fine on [him] contingent on conduct of the United States." *Id.*

## ARGUMENT

I. **THE DISTRICT COURT'S NOW-PURGED CIVIL CONTEMPT ORDER DOES NOT CAUSE ISIHARA A COGNIZABLE INJURY THAT THIS COURT CAN REDRESS THROUGH A FAVORABLE OPINION.**

"The standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Huyer v. Van de Voorde*, 847 F.3d 983, 986 (8th Cir. 2017) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)). Like a district court plaintiff, then, Isihara "must demonstrate (1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable

8

decision by the court will redress the alleged injury." *Id.* (quoting *Iowa League of Cities v. EPA*, 711 F.3d 844, 869 (8th Cir. 2013)). But in the appellate context, "the focus shifts to injury caused by the judgment rather than injury caused by the underlying facts." *Natural Res. Def. Council v. Pena*, 147 F.3d 1012, 1018 (D.C. Cir. 1998) (quoting 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3902, at 63 (2d ed. 1991)). In other words, the question is whether Isihara has "experienced an injury 'fairly traceable to the judgment below.'" *West Virginia v. EPA*, 597 U.S. 697, 718 (2022) (quoting *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 432-433 (2019)) (emphasis omitted). Isihara has not.

**A.** "In the context of purely coercive civil contempt, a contemnor's compliance with the district court's underlying order moots the contemnor's ability to challenge his contempt adjudication." *In re Grand Jury Subpoena*, 955 F.2d at 672. That rule is well established. Circuit after circuit, in case after case, holds that a coercive civil contemnor cannot challenge a district court's contempt citation if he purges his contempt before he suffers any penalties. *See RSE-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC*, 718 F.3d 1308, 1314 (11th Cir. 2013) ("[B]ecause he complied with the orders underlying the district court's contempt adjudication and thereby purged himself of contempt, Roberts has rendered moot any contentions he may have had with respect to his contempt

9

adjudication or the $57,000 in daily contempt sanctions."); *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (where contemnor "did in fact purge himself of contempt," his "appeal is now moot"); *Consolidated Rail Corp. v. Yashinsky*, 170 F.3d 591, 596 (6th Cir. 1999) ("Because the underlying judgment is no longer enforceable, the coercive part of the order no longer serves a purpose and is now moot."); *United States v. Griffin*, 816 F.2d 1, 7 n.4 (D.C. Cir. 1987) ("Because the contempt has been purged, the issue presented by appellant is moot.").[3]

This Court is among the many to recognize this principle. In *United States v. Watson Chapel School District No. 24*, 446 F.2d 933, 939 (8th Cir. 1971), the Court explained that the appeal "was moot" because "[t]he contemnor has seen fit to certify that he has disengaged from any activity violative of or in encouraging violation of the court decree." There was therefore "no sanction en force to present a justiciable controversy for appellate review"; "[b]y purging himself of the contempt, nothing remains." *Id.* Similarly, in *FTC v. Stroiman*, 428 F.2d 808, 809

---

[3] As the quotes reveal, many cases discuss this principle through a mootness lens, often because the contemnor purged after appealing. But standing is the defect in this case because Isihara purged before appealing; he had no legally cognizable injury traceable to the District Court's order and redressable by this Court at the time he invoked the Court's jurisdiction. In any case, the distinction is largely academic; "[t]he Supreme Court has repeatedly described the mootness doctrine as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " *National Right to Life Pol. Action Comm. v. Connor*, 323 F.3d 684, 691 (8th Cir. 2003) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

10

(8th Cir. 1970) (per curiam), the Court explained "upon compliance with the Commission's subpoena . . . , the district court's order enforcing the civil contempt proceeding became immediately abated." Once there was "compliance with the court's original order of enforcement there existed no pending controversy for this court to pass upon." *Id.* And in *Barnes v. Bosley*, 828 F.2d 1253, 1259-60 (8th Cir. 1987), the Court held that a district court did not err in declining to rule on a plaintiff's contempt motion because the district court's "finding that defendants had complied with the order of reinstatement mooted any issue as to civil contempt since remedial action to secure compliance was no longer necessary."

These cases all compel dismissal here. Isihara was held in coercive civil contempt solely to force compliance with the District Court's release and return order and would have had to pay a fine only if Mr. Soto Jimenez did not receive his identity documents the day after the contempt hearing. Hrg. Tr. 74:1-16. Isihara's contempt was purged before any fine would have been imposed when Mr. Soto Jimenez received his documents by overnight mail. ECF No. 23 at 1. And once Isihara purged his contempt, there was "no sanction en force to present a justiciable controversy for appellate review," *Watson Chapel School District No. 24*, 446 F.2d at 939, and "no pending controversy for this court to pass upon," *Stroiman*, 428 F.2d at 809.

11

Thus, although "an order sanctioning an attorney is appealable," *Baker Grp., L.C. v. Burlington N. & Santa Fe Ry. Co.*, 451 F.3d 484, 491 (8th Cir. 2006), there is "no sanction en force" here for this court to review, *Watson Chapel School District No. 24*, 446 F.2d at 939. If the Court "were to decide whether a contemnor can justifiably ignore a [court order] in a case where [an order] is not being ignored (and the contemnor is no longer a contemnor), this court would violate the constitutional prohibition against 'deciding abstract, hypothetical or contingent questions.'" *In re Grand Jury Subpoena*, 955 F.2d at 671-672 (quoting *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 461 (1945)) (brackets omitted). The issue raised in Isihara's notice of appeal—whether the District Court supposedly properly conditioned Isihara purging his contempt on the Government's actions—is academic because the Government in fact promptly complied with the District Court's order, allowing Isihara to purge his contempt.

**B.** Isihara cannot escape this unbroken line of precedent by fearing collateral consequences from his purged contempt citation. As this Court has explained, appealing a purged contempt order amounts to "an appeal from a future sanction which may in fact never be invoked." *Stroiman*, 428 F.2d at 809. Any collateral consequences that Isihara might suffer are traceable not to the District Court's now-nonexistent contempt order, but to some future assessment of his conduct in this case. *See Clark Equip. Co. v. Lift Parts Mfg. Co.*, 972 F.2d 817,

12

819-820 (7th Cir. 1992) (moot sanctions order has no preclusive effect); *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) (standing requires that harm claimed not be "the result of the independent action of some third party not before the court") (cleaned up).

This distinguishes coercive civil contempt, like the District Court entered here, from retrospective Rule 11 sanctions or formal reprimands. Circuits that allow attorneys to appeal these punishments do so on the ground that a district judge's formal finding that an attorney has engaged in misconduct impugns the attorney's professional reputation and therefore creates a sufficient ongoing injury to support an appeal. *See*, *e.g.*, *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1350-53 (Fed. Cir. 2003) (surveying authority). But where, as here, a district court "chose to impose monetary sanctions, not a reprimand, in response to the perceived misconduct," and later withdrew the monetary sanctions, "no sanction remains" and an appellate court "lack[s] jurisdiction to consider the propriety of the offending findings." *In re Williams*, 156 F.3d 86, 90 (1st Cir. 1998).

Simply put, the District Court here chose to impose a coercive monetary sanction on Isihara to compel compliance with its prior release and return order—not punish him—which is why the court withdrew the sanction when Isihara purged his contempt. ECF No. 23 at 1. And although the District Court remarked

13

on Isihara's conduct in holding him in contempt, the District Court's "descriptions . . . plainly were not the sanction itself, but, rather, served to justify the imposition of" a coercive civil contempt order that was, at its core, designed to ensure that the court's release and return order was obeyed. *Williams*, 156 F.3d at 90.

There is one final reason why Isihara does not have standing to appeal the District Court's order: To the extent Isihara premises his injury on harm to his professional reputation, there is nothing this Court's opinion can do to redress it. If anyone thinks less of Isihara, it is because he failed to cause ICE to comply with the District Court's release and return order despite being notified of it from multiple sources. *See* Hrg. Tr. 16:11-13, 25:14-18, 24:21-25, 25:8-13, 26:16-27:13, 29:3-5. But there is no prospect this Court's opinion will remedy that impression because Isihara freely admitted those facts below. *See id.* Even if Isihara demonstrated that the District Court's contempt citation was improper on some technical ground, the injury to Isihara's professional reputation would be unchanged. *See Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021) (party invoking court's jurisdiction must show that "a favorable decision will likely redress the injury").

Isihara—an Army attorney thrown into the deep end of federal habeas practice—is no doubt stung by the District Court's criticism, even as the court

14

declined to find that his conduct was willful and empathized with the U.S. Attorney's Office's insufficient resources. But as this Court has held, "appellate review of every judicial scolding of an attorney would presage 'a breathtaking expansion in appellate jurisdiction.' " *Baker Grp.*, 451 F.3d at 491 (quoting *Bolte v. Home Ins. Co.*, 744 F.2d 572, 573 (7th Cir. 1984)). Isihara's appeal should be dismissed.

## II. IF THE COURT WISHES TO CONSIDER THE MERITS, IT SHOULD CONSIDER APPOINTING AN *AMICUS CURIAE* IN SUPPORT OF THE DISTRICT COURT'S ORDER.

A significant concern in appeals challenging District Court findings untethered from a tangible sanction is that they are often one-sided. "After all, the parties to a case usually are interested in the decision, order, judgment, or decree, and not in the findings (except to the extent that they relate to the decision, order, judgment, or decree)." *Williams*, 156 F.3d at 91. So it is here: Mr. Soto Jimenez below had no interest in whether Isihara was held in coercive civil contempt apart from recovering his identity documents, and he continues to have no interest in how this Court resolves the merits of Isihara's appeal now that he has his identity documents back.

But there is no reason that the Court, if it reaches the merits, should "hear only one side of the story, and . . . be deprived of the balanced adversarial presentation that is so helpful to the proper functioning of the appellate process."

15

*Id.* The District Court held Isihara in coercive civil contempt to protect the integrity of its proceedings and ensure compliance with its order. *See* ECF No. 23 at 5-9. These interests deserve proper presentation, which Mr. Soto Jimenez is not in a position to provide. Courts of appeals often appoint an *amicus curiae* to argue in support of a district court's judgment or opinion when there is no party to do so. *See*, *e.g.*, *In re Denby-Peterson*, 941 F.3d 115, 122 (3d Cir. 2019); *Landeros v. Pinnacle Recovery, Inc.*, 692 F. App'x 608, 610 & n.1 (11th Cir. 2017) (per curiam); *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 332 (D.C. Cir. 2003). If the Court does not summarily dismiss for lack of jurisdiction, it should consider doing the same here.

## CONCLUSION

For the foregoing reasons, the appeal should be dismissed.

Respectfully submitted,

/s/ Sean Marotta
Sean Marotta
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-4881
sean.marotta@hognlovells.com

*Counsel for Appellee*

March 11, 2026

# CERTIFICATE OF COMPLIANCE

1. This motion complies with the type-volume limitation Federal Rule of Appellate Procedure 27(d)(2) because it contains 3,736 words.

2. This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

/s/ Sean Marotta
Sean Marotta

## CERTIFICATE OF SERVICE

I certify that on March 11, 2026, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Sean Marotta
Sean Marotta
