No. 26-1327

THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

RIGOBERTO SOTO JIMENEZ,

Petitioner-Appellee,

v.

MATTHEW ISIHARA,

Appellant,

PAMELA BONDI, Attorney General; KRISTI NOEM, Secretary, U.S. Department
of Homeland Security; TODD M. LYONS, Acting Director of Immigration and
Customs Enforcement; DAVID EASTERWOOD, Acting Director, St. Paul Field
Office Immigration and Customs Enforcement; WARDEN,
ERO El Paso Camp East Montana, El Paso, Texas.

Respondents.

On Appeal from the United States District Court
for the District of Minnesota

**OPPOSITION TO MOTION TO DISMISS**

BRETT A. SHUMATE
*Assistant Attorney General*

DANIEL N. ROSEN
*United States Attorney*

MARK R. FREEMAN
DANIEL TENNY
JAYNIE LILLEY
*Attorneys, Appellate Staff*
*Civil Division, Room 7215*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1838*

# INTRODUCTION AND SUMMARY

The motion to dismiss should be denied. As petitioner does not dispute, the contempt order is final and this Court has statutory appellate jurisdiction under 28 U.S.C. § 1291. Special Assistant United States Attorney Matthew Isihara has Article III standing to challenge a contempt order wrongly imposed on him in his personal capacity. And Mr. Isihara's appeal is not moot because that improper contempt order will have adverse, ongoing, concrete consequences for Mr. Isihara's legal career, military record, and security clearance. Mr. Isihara is entitled to be heard on why the order should be reversed or, at a minimum, formally vacated to ensure that it has no ongoing effect.

In moving to dismiss, petitioner proceeds from the wrong premise. This is not a challenge to a civil contempt order imposed on a party in civil litigation and subsequently purged by that party. Rather, it is an appeal from a contempt order wrongfully entered against the government's litigation counsel in his personal capacity in an improper attempt to coerce the defendant federal agency into speedier compliance with an order against that agency. Specifically, when Immigration and Customs Enforcement (ICE) failed immediately to comply with aspects of the district court's habeas order in this case, the district court held Mr. Isihara, the government's litigation counsel, personally in contempt and ordered that he pay running fines of $500 per day from his personal pocket until ICE came into compliance.

As Mr. Isihara's merits brief will explain, that order was manifestly improper. Government lawyers do not, by representing an agency in a district court, personally guarantee the agency's compliance with court orders. A federal court abuses its authority when it uses its contempt power as a wedge to set an attorney against his own client. Just as one party in litigation cannot properly seek advantage over the other by threatening to impose personal consequences on opposing counsel, the district court here had no authority to impose personal costs or consequences on Mr. Isihara in order to influence the conduct of ICE. Yet it did so, emphatically and without prior notice to Mr. Isihara. Now, absent this Court's review, Mr. Isihara faces concrete, ongoing professional consequences from that improper contempt order.

Petitioner emphasizes that ICE promptly came into compliance with the court's habeas order and that the court declared the contempt order purged before Mr. Isihara paid any daily fines. But that only underscores the problem: the fact that the court held a personal-capacity contempt order against Mr. Isihara purged based on compliance by his client makes clear that Mr. Isihara and his legal career were wrongfully held captive to induce ICE's compliance. That ICE complied before Mr. Isihara was forced to incur personal-capacity fines should not perversely immunize the court's improper order from review. Normally, a party facing civil contempt has the option of complying, thereby purging the contempt, or continuing to resist and seeking further review. Mr. Isihara, however, lacked that choice because—to state the obvious—a SAUSA in the District of Minnesota does not control ICE. Because Mr.

2

Appellate Case: 26-1327    Page: 3    Date Filed: 03/23/2026 Entry ID: 5621062

Isihara himself had no ability to comply or prevent compliance, he should not be required to suffer permanent professional consequences from the district court's contempt order absent this Court's review.

Indeed, petitioner acknowledges (at 13) that if the district court had simply reprimanded Mr. Isishara, the order would have been appealable because of the professional consequences that attend such a reprimand for a lawyer. That the district court here went much farther—and crossed important lines along the way—leaves no doubt that Mr. Isihara's appeal presents a justiciable controversy.

In any event, if this Court harbors any doubts about its jurisdiction, it plainly has authority to construe this appeal as a petition for mandamus. It would be entirely appropriate for this Court to exercise its supervisory authority to prevent district court judges from deploying personal-capacity contempt sanctions against government attorneys as a weapon to influence ICE or other agencies. The Court should, at an absolute minimum, allow the case to proceed to full briefing and argument. Mr. Isihara takes no position on whether this Court should appoint an *amicus curiae* to defend the district court's order in the course of appellate proceedings.

## STATEMENT

This appeal arises from a habeas action in which petitioner challenged his detention under the immigration laws and obtained a judgment ordering the government to release petitioner from custody under certain conditions. The government did release petitioner from custody, but failed to satisfy the conditions,

3

and the district court imposed a civil contempt order based on that failure. The contempt order was issued not only against the party responsible for releasing petitioner— ICE within the Department of Homeland Security—but also against Special Assistant United States Attorney Matthew Isihara in his personal capacity. This appeal challenges that decision. Petitioner has taken no position on the merits of the contempt order but has urged that this Court should dismiss the appeal for lack of jurisdiction.

1. On February 2, 2026, petitioner filed a petition seeking a writ of habeas corpus, and the district court entered judgment in his favor one week later on February 9 on the ground that the government had not opposed the petition. ECF No. 5 (Order).[1] The district court ordered the government to release petitioner within four days, by February 13, "in Minnesota" and "without imposing any conditions of release and to return all property to him." ECF No. 6. The court further ordered the government "to file a status report certifying its compliance with this Order by no later than 3:00 p.m. on Tuesday, February 17, 2026." *Id.*

Petitioner's counsel transmitted the order to the ICE facility in El Paso, Texas, where petitioner was then detained, and further notified ICE that the order required petitioner's release in Minnesota with all of his property. *See* ECF No. 10-1. ICE released petitioner from custody the following day, on February 12, in Texas without

---

[1] ECF citations refer to entries on the district court docket.

4

his identification documents.  ECF No. 23, at 2.  The day petitioner was released in Texas, petitioner's counsel noted for ICE the requirement to release petitioner in Minnesota with his documents.  The same day, petitioner's counsel contacted the U.S. Attorney's Office about ICE's failure to release petitioner in Minnesota.  ECF No. 10-2, ECF No. 3-1, at 1.

Mr. Isihara, who is on detail from the Judge Advocate General's Corps of the United States Army to the U.S. Attorney's Office for the District of Minnesota, had been assigned to the case but had not yet entered an appearance.  *See* Tr. 34, 38. Accordingly, petitioner's counsel's inquiry was routed to Mr. Isihara, and Mr. Isihara responded to petitioner's counsel that he would investigate and respond later that day. ECF No. 10-3, at 1-3.  Mr. Isihara did not substantively respond, an omission that he subsequently attributed to the press of other business; in particular, Mr. Isihara was handling an overwhelming volume of immigration cases that have consumed the resources of the U.S. Attorney's Office of the District of Minnesota, as many judges in that district have noted.  Tr. 12-13, 27-29.  On February 16, petitioner's counsel sought an update from Mr. Isihara, and she also notified Mr. Isihara that petitioner had been released without his identification documents and asked for assistance in the return of his documents.  ECF No. 10-3, at 1-2.

After the expiration of the deadline for the government's status report on February 17, petitioner filed a letter with the district court noting the government's

5

"partial non-compliance" with the February 9 order. *See* ECF No. 8, at 1. Later that day, the district court issued an order requiring that the

> Government must show cause, if any there be, why it should not be held in contempt for (1) failing to release Petitioner in Minnesota, as required by the Court's February 9 Order, (2) failing to return Petitioner's property to him, as required by the Court's February 9 Order, and (3) failing to timely provide a status update to the Court, as required by the Court's February 9 Order.

ECF No. 9, at 1. The district court further set a hearing for the following day and directed that certain "individuals" appear in court, including the Chief of the Civil Division of the U.S. Attorney's Office or "an Assistant U.S. Attorney responsible for the management of this case" and "[a] representative (or representatives) of Immigration and Customs Enforcement who had notice of the Court's February 9 Order and is responsible for Petitioner's custody, property, and release." *Id.* at 2. The court's order did not suggest that the court was considering imposing personal-capacity sanctions on government counsel.

2. At the show-cause hearing the following day, Mr. Isihara and the Civil Chief appeared along with a representative of ICE. They explained that the current caseload volume in the U.S. Attorney's Office and at ICE had been "overwhelm[ing]" but that the government's non-compliance had been inadvertent and not willful. Tr. 34, 43-44.

The district court determined that there were "two outstanding noncompliance issues": the return of petitioner's property and the filing of the government's status update. Tr. 30, 32, 40. The court conducted an extensive inquiry into what it deemed

6

a "complete breakdown" between the U.S. Attorney's Office and ICE and directed that ICE disclose the names of ICE officials who were involved in petitioner's release in Texas and failure to release petitioner's identifications documents. Tr. 32-36, 52-80. The district court examined an ICE official for information about the status and location of petitioner's property. Tr. 55-58. The district court queried whether "ICE compl[ied] with" the order to release petitioner in Minnesota. Tr. 57. The court stated that Mr. Isihara had failed to promptly transmit the notice of order to ICE (although, as noted, petitioner's counsel had done so); had failed to respond substantively to counsel's February 12 email; had failed to take steps on February 16 to seek the return of petitioner's property; and had failed to timely file a status report confirming ICE's compliance with the district court's order. *See* Tr. 29, 40; ECF No. 23, at 3-4.

3. The district court held the "Government in civil contempt of court," but the court "impose[d] civil contempt sanctions on Matthew Isihara" based on the court's conclusion that he "is primarily responsible for the ongoing noncompliance" with the court's order. Tr. 72-73; *see also* ECF No. 23, at 4 ("SAUSA Isihara was most at fault for the Government's continued noncompliance with the Court's February 9 order."); *id.* at 4, n.1 ("It is unclear whether others were also responsible for this noncompliance . . . the Court has no understanding as to who released [petitioner] in Texas, rather than Minnesota, and without his property."). After concluding that civil contempt was appropriate, the court stated that the "burden shifts to the Government

7

to show that it is unable to comply" and reasoned that the government had not met its burden, rejecting the government's argument that the errors were inadvertent and a result of resource constraints. Tr. 73.

The district court stated that any contempt sanction must account for the character and magnitude of the harm; the probable effectiveness of a particular sanction; and the "amount of the Government and, specifically, the Special Assistant U.S. Attorney Isihara's financial resources and the consequent seriousness of the burden to that particular party." Tr. 74. The court then imposed a personal-capacity fine on Mr. Isihara of $500 for each day that petitioner did not have his property, beginning on February 20 (that is, two days after the hearing). *Id.*

The government returned petitioner's property on February 19, and the district court issued an order concluding that the contempt had been purged. *See* ECF No. 23. That order explained that the civil contempt order had been justified, in part, based on what the court regarded as the government's misconduct in other cases, as well as the court's own warning to Mr. Isihara in another case, *see id.* at 5-9.

## ARGUMENT

This Court has jurisdiction to consider Mr. Isihara's appeal of the district court order formally holding him in contempt. As petitioner does not dispute, that order, which was in connection with a final order of habeas relief, is final for purposes of 28 U.S.C. § 1291. On the merits, as Mr. Isihara's brief in this Court will explain, the contempt order was improper and unjustified, including because it improperly

8

threatened the personal interests of an attorney to induce his client's compliance, and because Mr. Isihara could not reasonably have anticipated that allegations of noncompliance by ICE would lead to a contempt order against him personally. Mr. Isihara cannot be held personally responsible for the conduct of ICE, which Mr. Isihara does not and cannot control. Mr. Isihara has Article III standing to challenge the contempt order because it injures him personally. And his appeal is not moot because the improper contempt order threatens adverse, ongoing, practical consequences for Mr. Isihara's legal career, military record, and security clearance. The fact that ICE complied before the fines accrued should not perversely immunize the court's improper order from review.

1. As the motion to dismiss recognizes (at 13), courts have generally treated reprimands of attorneys as appealable orders, in light of the concrete practical consequences that arise for attorneys when courts issue disciplinary orders against them. The same principle controls here. The reputational consequences of the district court's contempt order are no less significant than the types of professional injuries associated with judicial reprimands that have long been recognized to provide standing for an attorney to appeal, even in the absence of other tangible harm such as a monetary penalty.

Judicial reprimands are appealable because "a judicial reprimand is likely to have a serious adverse impact upon a lawyer's professional reputation and career." *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1352-53 (Fed. Cir. 2003) (A

9

reprimand "had a sufficiently direct impact" on the attorney that "she should be able immediately to obtain appellate review of that action."); *see also Sullivan v. Committee on Admissions & Grievances*, 395 F.2d 954, 956 (D.C. Cir. 1967) (The district court's finding that an attorney was guilty of misconduct "plainly reflect[ed] adversely on his professional reputation" and was appealable); *Walker v. City of Mesquite*, 129 F.3d 831, 832-33 (5th Cir. 1997) ("[T]he importance of an attorney's professional reputation, and the imperative to defend it when necessary, obviates the need for a finding of monetary liability or other punishment as a requisite for the appeal of a court order finding professional misconduct."); *In re Williams*, 156 F.3d 86, 92 (1st Cir. 1998) ("Words alone may suffice [to permit an appeal of an order sanctioning an attorney] if they are expressly identified as a reprimand."); *United States v. Talao*, 222 F.3d 1133, 1138 (9th Cir. 2000) ("We have no reluctance in concluding that the district court's finding of an ethical violation by [an Assistant U.S. Attorney] is an appealable sanction."); *Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163, 1167-69 (10th Cir. 2003) ("[D]amage to an attorney's professional reputation is a cognizable and legally sufficient injury" to allow for appeal of an order finding that an attorney committed an ethical violation.); *In re Goldstein*, 430 F.3d 106, 111-12 (2d Cir. 2005) (A finding of attorney misconduct and referral for discipline was immediately appealable).  In particular, as the Federal Circuit has explained, "a judicial reprimand is likely to have a serious adverse impact upon a lawyer's professional reputation and career," so much so that "such a reprimand may have a more serious adverse impact upon a lawyer

10

than the imposition of a monetary sanction." *Precision Specialty Metals*, 315 F.3d at 1352-53. As the court explained, "[a] lawyer's reputation is one of his most important professional assets." *Id.* at 1353.

A formal contempt order against litigation counsel carries with it the same types of harms. And those harms are concrete. If the attorney applies to be a member of the bar of a new state—a likelihood here, given that Mr. Isihara has not yet established a practice in a single state by virtue of his military service—the attorney may be required to report contempt orders of this kind. The bar of any state in which the attorney holds a license may also impose reporting obligations on an attorney held in contempt and may require the attorney to face an investigation and possible discipline.

These practical consequences are more than adequate to establish standing to appeal the district court's contempt order. But the contempt order against Mr. Isihara also involves the possibility of consequences for his government and military career. Department of Justice attorneys held in contempt are subject to review by the Department's Office of Professional Responsibility. *See* 28 C.F.R. §§ 0.39, 0.39a(a)(1). That office reviews allegations of misconduct made against Department attorneys that relate to the attorneys' exercise of their authority to investigate, litigate, or provide legal advice. *Id.* § 0.39a(a)(1). After that Office conducts an investigation, it may refer the matter to Departmental authorities for appropriate discipline. *Id.* In addition, to maintain a security clearance, Mr. Isihara is likely to be required to report the district

Appellate Case: 26-1327     Page: 12     Date Filed: 03/23/2026 Entry ID: 5621062

court's formal finding of contempt. U.S. Off. of Pers. Mgmt, Standard Form 86, Questionnaire for National Security Positions, 25, 30 (revised Nov. 2016), https://perma.cc/S5CE-HADZ (requiring reporting if employee was "officially reprimanded, suspended, or disciplined for misconduct in the workplace"). Finally, throughout their Army careers, Judge Advocates assigned to specialized roles in the field of National Security Law or other assignments may need to pursue higher levels of security clearance, including Top Secret Clearance. This would require additional, follow-on investigation. These are common, and foreseeable, career pivots for an Army Judge Advocate.

In short, there is no basis for petitioner's assertion that Mr. Isihara lacks a legally cognizable interest in vacatur of the judicial order that inflicts all of these consequences on him personally. And petitioner properly does not contest any other aspect of appellate jurisdiction: the case had proceeded to final judgment before the contempt order was entered, so this Court's jurisdiction under 28 U.S.C. § 1291 is clear.

2. Petitioner's contention that Mr. Isihara lacks standing stems from petitioner's effort to analogize this case to a more conventional civil-contempt order in which the party, rather than the attorney, has been held in contempt. *See, e.g.*, *FTC v. Stroiman*, 428 F.2d 808, 809 (8th Cir. 1970). The premise of those cases is that "purging the contempt eradicates any effect of a violation." *In re Kulp Foundry, Inc.*, 691 F.2d 1125, 1130 (3d Cir. 1982) (quoting *Marshall v. Whittaker Corp., Berwick Forge*

12

*& Fabricating Co.*, 610 F.2d 1141, 1145 (3d Cir. 1979)). Where a contemnor chooses to comply rather than appeal contempt, courts have reasonably treated an appeal from the contempt order as moot. *See, e.g.*, *United States v. Watson Chapel Sch. Dist. No. 24*, 446 F.2d 933, 939 (8th Cir. 1971) (A party's appeal of coercive contempt was moot because "[t]he contemnor has seen fit to certify that he has disengaged from any activity violative of" the court order, rather than challenge the order.).

That is plainly not the case here. Mr. Isihara does not control ICE; the metaphorical keys were in ICE's pocket, not his. The agency's decision to take action to purge the contempt order did not reflect any judgment by Mr. Isihara that it was better to comply than seek further review. The choice was not his at all, because the district court improperly held Mr. Isihara in contempt to coerce ICE's conduct. And while ICE's compliance may have eliminated the consequences of the order for ICE, it did not separately eliminate the consequences of the district court's gambit for Mr. Isihara. The cases on which petitioner relies all involved civil contempt purged by the party subject to the order in question—not, as here, litigation counsel wrongfully held in contempt for the conduct of their client. *See Stroiman*, 428 F.2d at 809; *Barnes v. Bosley*, 828 F.2d 1253, 1259-60 (8th Cir. 1987); *see also In re Grand Jury Subpoena Duces Tecum, 91-02922*, 955 F.2d 670, 672 (11th Cir. 1992); *RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC*, 718 F.3d 1308, 1314 (11th Cir. 2013); *SEC v. Hickey*, 322

13

F.3d 1123, 1128 (9th Cir. 2003); *Consolidated Rail Corp. v. Yashinsky*, 170 F.3d 591, 596 (6th Cir. 1999); *United States v. Griffin*, 816 F.2d 1, 7 n.4 (D.C. Cir. 1987).[2]

The district court declared that "Isihara has purged his contempt" through ICE's compliance with the return-of-property requirement, and, accordingly, that Mr. Isihara would not pay any fines. *See* ECF No. 23, at 1.  The court did not acknowledge, however, the incongruity of declaring that Mr. Isihara had purged "his contempt" through ICE's compliance with an order entered against ICE.  Nor did the court vacate the personal-capacity contempt order or reverse its finding that Mr. Isihara had failed to comply with the habeas order (which was, again, an order directed at ICE).  To the contrary, the district court's order detailed Mr. Isihara's prior acts of asserted non-compliance with the release order. *See id.* at 2-5.  Accordingly, Mr. Isihara continues to suffer harms from the contempt order, and only vacatur of that order will redress those harms.  Mr. Isihara is entitled, at the very minimum, to a formal vacatur of the contempt order itself, or a declaration that it has no further effect of any kind.

Like a formal reprimand, the district court's declaration that Mr. Isihara failed as an officer of the court will linger well beyond the underlying habeas case.  As a member of the bar, a federal employee with a security clearance, and a military lawyer,

---

[2] In one case, *United States v. Watson Chapel School Dist.*, 446 F.2d 933 (1971), the conduct of an attorney was also involved but the attorney was an employee of the party and the conduct at issue did not involve his role as litigating counsel but aiding and abetting his client's active disobedience of a court's desegregation order.

Appellate Case: 26-1327     Page: 15     Date Filed: 03/23/2026 Entry ID: 5621062

Mr. Isihara faces concrete reporting requirements and predictable professional harms that distinguish his position from that of a party in a conventional civil contempt case who may face at most hypothetical future consequences. *See Stroiman*, 428 F.2d at 809 (dismissing as moot appeal of purged contempt order, where contemnor seeks an appeal from "a future sanction [that] may . . . never be invoked"). By comparing this case to ordinary examples of civil contempt against parties who elected to comply rather than seek further review, petitioner reasons entirely from the wrong premise.

Petitioner fares no better in analogizing this case to those in which judges merely made strong statements criticizing an attorney's conduct. Such cases have been dismissed for lack of jurisdiction because courts review judgments, not statements in opinions. *See Williams*, 156 F.3d at 90 ("[I]t is an abecedarian rule that federal appellate courts review decisions, judgments, orders, and decrees—not opinions, factual findings, reasoning, or explanations."). But here, Mr. Isihara seeks review of a contempt order, not merely of statements made by a district judge. And for similar reasons, this case does not create any line-drawing problems or give rise to the possibility that this Court will need to hear appeals each time a judge criticizes litigation counsel. *Cf. Baker Grp., L.C. v. Burlington N. & Santa Fe Ry. Co.*, 451 F.3d 484, 491 (8th Cir. 2006) (expressing concern that "appellate review of every judicial scolding of an attorney would presage a breathtaking expansion in appellate jurisdiction" (quotation marks omitted)). Formal contempt orders give rise to the professional consequences at issue here in a way that stern comments do not. Nor is

15

Appellate Case: 26-1327     Page: 16     Date Filed: 03/23/2026 Entry ID: 5621062

it correct that any collateral consequences are traceable not to the contempt order, but to a future assessment of Mr. Isihara's conduct in this case. *See* Mot. 12. The concrete reporting requirements arise from the contempt order and will be remedied by vacating that order.

3. If this Court nevertheless concludes that there is some technical hurdle to considering this appeal on the merits, this Court should treat the government's appeal as a petition for a writ of mandamus. *See Williams*, 156 F.3d at 92-93, & 93 n.7 (recognizing that option). As Mr. Isihara's merits brief will explain in more detail, this case, which involves a district court's holding government counsel in contempt based on the conduct of his client, would warrant the exercise of this Court's supervisory authority, particularly because issues similar to those presented here have recently arisen in other cases in the District of Minnesota. *See, e.g.*, Order, *Izea v. Bondi*, Nos. 26-CV-1499, 26-CV-1548 (D. Minn. Mar. 9, 2026) (order to show cause why, inter alia, the U.S. Attorney and the Civil Chief of the U.S. Attorney's Office should not be held in civil or criminal contempt based on ICE's alleged noncompliance with court orders); Memorandum Opinion and Order, *J.B.C.O. v. Bondi*, Nos. 26-424, 26-639, 26-778, 26-832, 26-1429 (D. Minn. Mar. 6, 2026) (setting hearing to address whether to impose civil contempt and impose fines and requiring appearance of U.S. Attorney and Civil Chief).

Appellate Case: 26-1327     Page: 17     Date Filed: 03/23/2026 Entry ID: 5621062

At an absolute minimum, this Court should proceed to merits briefing and argument. Mr. Isihara takes no position on whether the Court may wish to appoint an *amicus curiae* to defend the district court's order, as petitioner suggests.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to dismiss for lack of appellate jurisdiction.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DANIEL N. ROSEN
*United States Attorney*

MARK R. FREEMAN

*s/ Daniel Tenny*
DANIEL TENNY
JAYNIE LILLEY
*Attorneys, Appellate Staff*
*Civil Division, Room 7215*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1838*
*daniel.tenny@usdoj.gov*

MARCH 2026

17

Appellate Case: 26-1327    Page: 18    Date Filed: 03/23/2026 Entry ID: 5621062

# CERTIFICATE OF COMPLIANCE

This Opposition complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,229 words. This Opposition also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

Pursuant to Circuit Rule 28A(h)(2), I further certify that the Opposition has been scanned for viruses, and the Opposition is virus free.

/s/ *Daniel Tenny*
Daniel Tenny