# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

RIGOBERTO SOTO JIMENEZ,

    Petitioner-Appellee,

    v.

MATTHEW ISIHARA,

    Appellant,

PAMELA BONDI, *et al.*,

    Respondents.

No. 26-1327

## REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF APPELLATE JURISDICTION

## INTRODUCTION

Isihara spends much of his opposition arguing the merits: In his telling, the District Court was supposedly wrong to hold him in coercive civil contempt because ICE—not he—was responsible for returning Mr. Soto Jimenez's identity papers. *See* Opp. 2-4, 13-15, 16-17. But Isihara did not argue that below, and Isihara admitted that ICE didn't comply with the District Court's release and return order because *Isihara* did not facilitate the agency's compliance by sending ICE the order. *See* Mot. 5-7.

Even if the District Court erred, Isihara has to show why that error matters to him—why it causes a legally cognizable injury that this Court can redress. On that

1

threshold question, Isihara offers nothing concrete or specific. Isihara contends that the District Court's contempt citation is akin to a formal reprimand, but the hallmark of a formal reprimand or other appealable sanction is that the court finds the attorney has violated a specific ethical obligation. All the District Court found here was that Isihara had not facilitated obeyance of the court's order. Isihara also contends that he is subject to collateral consequences, but his opposition is littered with mights and maybes that are contradicted by the available facts and cited authorities.

Finally, Isihara says that if there is a defect with his appeal, it should be deemed a petition for mandamus. But mandamus requires Article III standing just as much as an appeal does. Isihara cannot trample the constitutional limitations on this Court's jurisdiction in hopes of an advisory opinion. His appeal should be dismissed.

## ARGUMENT

**I. THE POTENTIAL COLLATERAL CONSEQUENCES ISIHARA FEARS FROM THE DISTRICT COURT'S NOW-PURGED CONTEMPT CITATION DO NOT CONSTITUTE AN ARTICLE III CASE OR CONTROVERSY.**

**A.** Isihara does not disagree that he must have Article III standing to appeal. *See* Mot. 8-9. Isihara therefore does not disagree that he must show that the District Court's order injures him in a concrete way that is redressable by a favorable opinion from this Court. *See id.* And Isihara expressly agrees that the

2

ordinary rule is that once a civil coercive contemnor has purged his contempt, there is no live case or controversy. *See* Mot. 9-11; Opp. 12-13.

The ordinary rule thus seemingly disposes of this appeal. Yet Isihara contends that the ordinary rule should not apply to him because those cases involve a party purging its own contempt, while here the power to purge lay with ICE, not him. *See* Opp. 13-14. But the District Court found Isihara in civil coercive contempt because it "appear[ed] that he, based on the evidence before the Court at [the] hearing, [was] primarily responsible for the ongoing noncompliance with the Court's" order. Hrg. Tr. 72:14-19; *see* ECF No. 23 at 4-5 (concluding that "Isihara was most at fault for the Government's continued noncompliance"). Isihara had the ability to purge his contempt by coordinating the return of Mr. Soto Jimenez's identity papers with ICE. And with that distinction aside, the usual rule applies by its own terms. *Cf.* Opp. 13-14.

Further, Isihara's supposed distinction makes no difference. The distinction at most applies to this Court's rule that attorneys, unlike parties, can appeal sanctions after a case settles. *Perkins v. General Motors Corp.*, 965 F.2d 597, 600 (8th Cir. 1992). In those circumstances, "refusal to grant jurisdiction over an appeal of sanctions after the underlying suit has been settled thrusts a personal conflict upon the attorney—by settling a case in the client's interest he may have to forfeit a personal right to appeal the sanctions levied against him." *Id.* But these

3

Appellate Case: 26-1327     Page: 3     Date Filed: 03/30/2026 Entry ID: 5623525

"policy reasons for exercising jurisdiction" teach that a sanction on an attorney is a final order post-settlement; the justifications do not address Article III's separate prerequisites. *Id.* at 599-600.

All this leaves Isihara to claim that the District Court's purged coercive civil contempt citation is akin to an appealable formal reprimand. *See* Opp. 9-11; *see also Adams v. USAA Casualty Ins. Co.*, 863 F.3d 1069, 1076 & n.7 (8th Cir. 2017). But Isihara again misunderstands the differences between a reprimand and coercive civil contempt. A reprimand injures an attorney in a legally cognizable way because that is its very point: it is designed to impact the attorney's reputation by constituting a formal finding that the attorney has violated a particular rule of professional conduct. *See*, *e.g.*, *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1352 (Fed. Cir. 2003) (reprimand was appealable because it was "explicit and formal, imposed as a sanction for what the court determined was violation of the court's Rule 11 in signing motion papers which contained omissions/misquotations") (internal quotation marks omitted). That is why, for instance, this Court allows an attorney to appeal a formal finding that the attorney has violated an identified ethical standard, even if the finding is not labeled a reprimand. *Adams*, 863 F.3d at 1076 n.7. Standing comes from "the severe injury that professional misconduct findings inflict on attorneys' reputations." *Id.*

Appellate Case: 26-1327    Page: 4    Date Filed: 03/30/2026 Entry ID: 5623525

Coercive civil contempt is not similar.  Coercive civil contempt's only purpose is to "force the offending party to comply with the court's order." *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992).  And to hold someone in civil coercive contempt, a district court need only find, "by clear and convincing evidence, that the alleged contemnor[ ] violated a court order." *Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000).  The violation need not be willful.  *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of wilfulness does not relieve from civil contempt.")  So a district court need not conclude—and the District Court did not conclude here— that an attorney violated a rule of professional conduct to hold him in coercive civil contempt.  *See* Hrg. Tr. 72:10-73:9; ECF No. 23 at 4-7 (order).  It is enough that Isihara did not forward the District Court's release and return order to ICE, which resulted in ICE not obeying the order, even though the District Court concluded that Isihara's failure was perhaps understandable under the circumstances.  *See* ECF No. 23 at 7-8 (acknowledging that the Minnesota U.S. Attorney's Office was severely under-resourced and stating that the court "empathizes" with the Office's plight).  That is perhaps why, despite contending (at 3) that the District Court's coercive civil contempt order "went much farther" than a reprimand, Isihara never identifies the District Court's findings that supposedly injure his reputation.

5

**B.**     Isihara also attempts to name what he thinks may be some collateral consequences of the District Court's purged coercive civil contempt order.  *See* Opp. 11-12.  But the consequences Isihara identifies are too speculative, refuted by the available evidence, not traceable to or redressable by the District Court's contempt order, or all three.

1.     Isihara says that he "may" have to report the contempt order when he applies to the bar of a new State; that he "may" have to report the contempt order to the bar of the State where he is licensed; that there is a "possibility" of a Department of Justice Office of Professional Responsibility investigation into his actions; and that he "may" need to pursue a higher level of security clearance where the contempt order will be adverse information.  *See* Opp. 11-12.  But mights and mays do not suffice under Article III.  "[T]he Supreme Court 'has repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient.' "  *L.H. v. Independence Sch. Dist.*, 111 F.4th 886, 893 (8th Cir. 2024) (brackets omitted) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  Isihara does not even allege—much less prove, such as through a declaration—that he intends to apply to a bar that will require him to disclose the purged coercive civil contempt order, that a bar he is a member of requires him to report the purged coercive civil contempt order, that the Office of Professional

6

Responsibility has launched or will likely launch an investigation, or that he will likely receive a future assignment requiring a higher security clearance. Isihara's " 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that" this Court's cases require. *Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019) (citation omitted).

2. If anything, the available evidence—including Isihara's few cited sources—undermines Isihara's speculative claims of harm. Isihara fears he might have to report the purged contempt citation to his state bar. Opp. 11. But Isihara appears to be admitted in Georgia,[1] and Georgia requires reporting of out-of-state sanctions only when they are "imposed as the result of conduct that would be in violation of the Georgia Rules of Professional Conduct if occurring in Georgia." Ga. R. of Pro. Conduct 9.1(a)(3), (b). And Isihara does not contend the purged coercive civil contempt order was imposed for conduct that would violate the Georgia rules.

---

[1] *See* Matt Isihara, LinkedIn, https://www.linkedin.com/in/matt-isihara-28484630/ (last accessed March 30, 2026) (Isihara attended University of Georgia School of Law, graduated in 2020, and worked as a Georgia public defender); Mr. Matthew Fariz Isihara, State Bar of Georgia, Member Search Results, https://perma.cc/EFT9-B23A (last accessed March 30, 2026) (listing a Matthew Isihara who attended University of Georgia School of Law and was admitted as a Georgia bar member in 2021).

7

Isihara's fears about an Office of Professional Responsibility investigation are similarly unsupported. The regulation that Isihara cites (at 11) says simply that Office will "[r]eceive, review, investigate and refer for appropriate action allegations of misconduct involving Department attorneys." 28 C.F.R. § 0.39a(a)(1). The Department's Justice Manual, meanwhile, requires reporting to the Office of only "a finding of misconduct by a Department attorney." U.S. Dep't of Justice, Justice Manual § 1.4-310, https://perma.cc/J329-D2RK. But the District Court did not find that Isihara engaged in misconduct. And the very fact that Isihara is pursuing this appeal, represented by his Department of Justice colleagues, means that the Solicitor General—one of the Department's highest-ranking officials—has concluded that the District Court's contempt citation was wrongful. *See* 28 C.F.R. § 0.20(b) (Solicitor General decides what appeals may be taken); Justice Manual § 2-2.121, https://perma.cc/N3L7-ZMQ3 (appeals must be approved by Solicitor General). The available evidence therefore refutes Isihara's speculations about the Office of Professional Responsibility.

Isihara is also wrong that he "likely" has to report the purged civil coercive contempt order in any security-clearance reinvestigation. *See* Opp. 11-12. The question Isihara cites asks whether the employee "received a written warning, been officially reprimanded, suspended, or disciplined for misconduct in the workplace,

Appellate Case: 26-1327    Page: 8    Date Filed: 03/30/2026 Entry ID: 5623525

such as a violation of security policy."  U.S. Off. of Pers. Mgmt, Standard Form 86, Questionnaire for National Security Positions 17, 30 (revised Nov. 2016), https://perma.cc/S5CE-HADZ.  But the District Court's purged coercive civil contempt order was not a written warning, official reprimand, suspension, or discipline.  And—again—the District Court's purged coercive civil contempt order was not imposed because Isihara engaged in misconduct.

3.      Finally, the harms that Isihara fears from bar authorities, the Office of Professional Responsibility, and Army security-clearance investigators are not traceable to the District Court's purged civil coercive contempt order or redressable by a favorable opinion from this Court.  *See FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 380 (2024) ("[C]ausation and redressability . . . are often flip sides of the same coin.") (citation and internal quotation marks omitted).  Isihara does not contend that the District Court's purged coercive civil contempt order is preclusive in these settings, because it is not.  *See Clark Equip. Co. v. Lift Parts Mfg. Co.*, 972 F.2d 817, 819-820 (7th Cir. 1992).  If bar authorities, the Office of Professional Responsibility, or the Army act against Isihara, it is because they have independently assessed Isihara's conduct on which the District Court's contempt order was based and found the conduct warrants consequences.  That is why this Court has held that a coercive civil contemnor's appeal that feared that a purged coercive civil contempt order could be a precursor

9

to a criminal contempt judgment was, "[i]n effect," a nonjusticiable "appeal from a future sanction which may in fact never be invoked." *FTC v. Stroiman*, 428 F.2d 808, 809 (8th Cir. 1970) (per curiam). And it is why the courts of appeals hold that a district court's referral of an attorney to a state disciplinary authority is not appealable when the referral is not accompanied by a particularized finding of misconduct. *Zente v. Credit Mgmt., L.P.*, 789 F.3d 601, 604-606 (5th Cir. 2015) (collecting cases). The district court's referral order "leav[es] further consideration, investigation, and judgment to" other bodies, and so does not cause the sanctions that others may later impose. *Teaford v. Ford Motor Co.*, 338 F.3d 1179, 1182 (10th Cir. 2003). The same is true here.

## II.   MANDAMUS REQUIRES ARTICLE III STANDING, TOO.

Isihara contends in the alternative that if the Court concludes "there is some technical hurdle to considering this appeal on the merits," the Court should treat the appeal as a mandamus petition to have the Court exercise its supervisory authority over the District of Minnesota. Opp. 16. But Article III standing is not a technicality; it is the "irreducible constitutional minimum." *State v. Biden*, 52 F.4th 362, 371 (8th Cir. 2022). The Court can therefore treat Isihara's appeal as a mandamus petition only "if he has Article III standing," *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 169 (4th Cir. 2024), because "Article III authority is a prerequisite to judicial review, however sought." *United States v.*

*McVeigh*, 106 F.3d 325, 334 n.7 (10th Cir. 1997) (per curiam).  And Isihara cannot evade that bar by asking this Court for a broad advisory opinion on how District of Minnesota judges exercise their inherent judicial powers.

In the end, Isihara's "failure to satisfy constitutional standing requirements . . . preclude[s] [the Court's] consideration of both [his] appeal and [his] petition for mandamus relief."  *Id.* at 334.  Isihara's complaint (at 16) that "issues similar to those presented here have recently arisen" in *other* cases cannot excuse Isihara's lack of standing in *this* case.  The appeal should be summarily dismissed.

## CONCLUSION

For the foregoing reasons and those in the motion, the appeal should be dismissed.

Respectfully submitted,

/s/ Sean Marotta
Sean Marotta
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-4881
sean.marotta@hognlovells.com

*Counsel for Appellee*

March 30, 2026

11

Appellate Case: 26-1327     Page: 11     Date Filed: 03/30/2026 Entry ID: 5623525

# CERTIFICATE OF COMPLIANCE

1.      This paper complies with the type-volume limitation Federal Rule of Appellate Procedure 27(d)(2) because it contains 2,375 words.

2.      This paper complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

3.      This paper has been scanned for viruses under Eighth Circuit Rule 28A(h) and is virus-free.

<u>/s/ Sean Marotta</u>
Sean Marotta

## CERTIFICATE OF SERVICE

I certify that on March 30, 2026, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Sean Marotta
Sean Marotta