## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

RIGOBERTO SOTO JIMENEZ,

Petitioner-Appellee,

v.

MATTHEW ISIHARA,

Appellant,

TODD BLANCHE, Acting Attorney General; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD M. LYONS, Acting Director of Immigration and Customs Enforcement; DAVID EASTERWOOD, Acting Director, St. Paul Field Office Immigration and Customs Enforcement; WARDEN, ERO El Paso Camp East Montana, El Paso, Texas,

Respondents.

On Appeal from the United States District Court
for the District of Minnesota

## ADDENDUM

BRETT A. SHUMATE
*Assistant Attorney General*

DANIEL N. ROSEN
*United States Attorney*

MARK R. FREEMAN
DANIEL TENNY
JAYNIE LILLEY
*Attorneys, Appellate Staff*
*Civil Division, Room 7321*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*(202) 514-3542*

**TABLE OF CONTENTS**

Order Granting Petition (R. Doc. 5) ..............................................................Add.1

Excerpts of Transcript of Show-Cause Hearing (R. Doc. 17) ...................................Add.4

Order (R. Doc. 23) ..............................................................................Add.13

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

RIGOBERTO S. J.,

Petitioner,

v.

PAMELA BONDI, *Attorney General*,
KRISTI NOEM*, Secretary, U.S.
Department of Homeland Security*,
TODD M. LYONS, *Acting Director of
Immigration and Customs Enforcement*,
DAVID EASTERWOOD, *Acting Director,
St. Paul Field Office Immigration and
Customs Enforcement*, and WARDEN,
*ERO El Paso Camp East Montana, El
Paso, Texas*,

Respondents.

Case No. 26-cv-957 (LMP/JFD)

**ORDER GRANTING PETITION**

Petitioner Rigoberto S. J. is a citizen of Mexico who has lived in Minnesota since 2018 with his lawful permanent resident spouse. ECF No. 1 ¶ 14. Rigoberto S. J. was arrested by immigration officials on January 14, 2026, and remains in the custody of United States Immigration and Customs Enforcement. *Id.* ¶¶ 17–21. He asserts that Respondents (the "Government") have detained him pursuant to the mandatory detention provisions of 8 U.S.C. § 1225(b)(2). *See id.* ¶¶ 26–27. Rigoberto S. J. contends that he is not subject to detention under 8 U.S.C. § 1225(b)(2) but instead is subject to detention, if at all, under 8 U.S.C. § 1226(a), and that the Government has not presented a warrant that justifies his detention. *Id.* ¶ 29. Rigoberto S. J. brings a verified petition for a writ of habeas corpus seeking his immediate release. *See generally id.*

**Add.1**

This Court has concluded that the mandatory detention provisions of 8 U.S.C. § 1225(b)(2) do not apply to noncitizens similarly situated to Rigoberto S. J. *See Roberto M. F. v. Olson*, No. 25-cv-4456 (LMP/ECW), 2025 WL 3524455, at *4 (D. Minn. Dec. 9, 2025); *Victor Hugo D. P. v. Olson*, No. 25-cv-4593 (LMP/DTS), 2025 WL 3688074, at *2–3 (D. Minn. Dec. 19, 2025). This Court has further held that to the extent such noncitizens are detained pursuant to 8 U.S.C. § 1226(a), the Government must present an administrative warrant to justify their detention. *See Joaquin Q. L. v. Bondi*, No. 26-cv-233, 2026 WL 161333, at *2–3 (D. Minn. Jan. 21, 2026); *see also* 8 U.S.C. § 1226(a) (stating that a noncitizen "may be arrested and detained" pending removal "[o]n a warrant issued by the Attorney General"). Rigoberto S. J. raised the same legal issues and largely requested the same relief granted in those cases, namely: (1) an order requiring his immediate release from custody; or (2) an order requiring the Government to conduct a bond hearing. *See* ECF No. 1 at 11-15.

On February 2, 2026, the Court ordered the Government to respond to the petition by February 5, 2026. The Government did not do so and has still not responded to the petition as of the date of this order. ECF No. 4 ("Respondents have provided no answer. Respondents also have not contested that the Court has jurisdiction in this matter as stated in the Petition."). The Government's failure to respond constitutes a waiver. *Juan M. v. Bondi*, No. 26-cv-266 (ECT/JFD), 2026 WL 129059, at *2 (D. Minn. Jan. 17, 2026); *Ihor D. v. Noem*, No. 26-cv-351 (JMB/DTS), 2026 WL 146507, at *1 (D. Minn. Jan. 20, 2026) ("Respondents do not oppose the Petition, and on that basis alone, and considering the factual showings made by Petitioner as recounted above, the Court grants the

**Add.2**

Petition."). Given that each day that the Government does not respond is another day Petitioner is being unlawfully detained, the Court grants the petition and will order Rigoberto S. J.'s requested relief: his immediate release in Minnesota. ECF No. 1 at 15.

<strong>ORDER</strong>

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Rigoberto S. J.'s Petition for a Writ of Habeas Corpus (ECF No. 1) is **GRANTED** as follows:

a. Rigoberto S. J.'s Verified Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**;

b. The Government is **ORDERED** to release Rigoberto S. J. from custody in Minnesota by no later than 5:00 p.m. on Friday, February 13, 2026;

c. The Government is **ORDERED** to release Rigoberto S. J. without imposing any conditions of release and to return all property to him; and

d. The Government is **ORDERED** to file a status report certifying its compliance with this Order by no later than 3:00 p.m. on Tuesday, February 17, 2026.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 9, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge

<strong>Add.3</strong>

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

-------------------------------------------------------------

Rigoberto S.J.,                )   File No. 26-cv-957
                           )       (LMP/JFD)
      Petitioner,          )
                           )
vs.                     )   St. Paul, Minnesota
                           )   February 18, 2026
Pamela Bondi, Attorney     )   2:01 p.m.
General; Kristi Noem,       )
Secretary, U.S. Department of   )
Homeland Security; Todd M.     )
Lyons, Acting Director of     )
Immigration and Customs       )
Enforcement; David Easterwood,  )
Acting Director, St. Paul     )
Field Office Immigration and   )
Customs Enforcement; and      )
Warden ERO El Paso Camp East   )
Montana, El Paso, Texas;      )
                           )
      Respondents.        )

-------------------------------------------------------------

BEFORE THE HONORABLE LAURA M. PROVINZINO
UNITED STATES DISTRICT COURT JUDGE

**(SHOW CAUSE HEARING VIA ZOOM)**

Proceedings recorded by mechanical stenography; transcript produced by computer.

APPEARANCES VIA ZOOM

For the Petitioner:          Zimmer Law Group LLC
                             ERIN LINS, ESQ.
                             155 Wabasha Street South
                             Suite 100
                             St. Paul, Minnesota 55107

For the Respondents:         United States Attorney's Office
                             DAVID W. FULLER, AUSA
                             MATTHEW ISIHARA, SAUSA
                             600 U.S. Courthouse
                             300 South Fourth Street
                             Minneapolis, Minnesota 55415

Court Reporter:              ERIN D. DROST, RMR-CRR
                             Suite 146
                             316 North Robert Street
                             St. Paul, Minnesota 55101

# I N D E X

PAGE

**SCOTT LADWIG**
Examination by the Court                                    49

At that point in time, I will expect to be informed of where the A-File is located, the deportation officer assigned to the case, and the OPLA attorney assigned to the case. All right.

(Recess taken at 3:26 p.m.)

*    *    *    *    *

(3:45 p.m.)

**IN OPEN COURT**

THE COURT: All right. We are back on the record at 3:45.

Either Mr. Fuller or Mr. Isihara, I'll give you the opportunity to tell me who that OPLA contact was.

MR. ISIHARA: Yes, Your Honor. I have that information available right now. The individual's name, if you're ready, is Cassondra Bly. First name is spelled C-A-S-S-O-N-D-R-A; last name is spelled B-L-Y. And she was the OPLA point of contact we were assigned.

THE COURT: Okay. Great. Thank you for that.

DFOD Ladwig, I think the other two pieces of information I needed were from you.

Who was the assigned deportation officer in El Paso?

MR. LADWIG: Yes, ma'am, I have that, but I -- it's my understanding that this officer was the case

officer -- I may be mistaken -- but it was DO Monica Hernandez.

THE COURT: Great.

And you said it's your understanding. How did you come to know that or believe that it's Monica Hernandez?

MR. LADWIG: Based on comments that she made in the case. The case has been -- since the alien has been released, it's actually been transferred up here to St. Paul on a nondetained docket. So, like I said, I can't say for sure. She may have just been covering for someone else. But she was the last one that had input into the -- our systems of record about the case prior to the release --

THE COURT: Okay.

MR. LADWIG: -- so that's why I think that.

THE COURT: Great.

MR. LADWIG: And then your second question --

THE COURT: And then the location of the A-File.

MR. LADWIG: It is in El Paso, and it's in a hearing drawer. So, ironically, there's a assistant field office director from El Paso that is up here in St. -- Minneapolis, anyway. I have him reaching out to his field office to try to track down both the property and the identity documents as we speak.

THE COURT: Great. Thank you for doing all that. I assume if it's in El Paso and you know the

precise location, those documents could be returned by tomorrow. Is that a fair assumption?

MR. LADWIG: I assume that it could be, but in the rare -- if not tomorrow, the next day type of thing, but yes.

The property might be a little bit different because it's a possibility that it could have been sent back up here. But we're going to run that down. And as soon as feasible, we will be able to get that back to Ms. Lins.

THE COURT: Okay. Based on everything I've heard today, and recognizing that I have given the Government a chance here, I have little confidence that petitioner's property will be returned to him absent some sanction.

Therefore, I'm going to hold the Government in civil contempt of court, and I am going to impose civil contempt sanctions on Matthew Isihara as it appears that he, based on the evidence before the Court at this hearing, is primarily responsible for the ongoing noncompliance with the Court's February 9th order.

This civil contempt sanction is deemed coercive, meaning it is imposed to force the Government to comply with the Court's order.

Civil contempt is appropriate when a party has notice of a clear and specific underlying order and violates that order. Here the Court's February 9th order was clear

and specific: all property, including identification documents, must be returned to petitioner.

Mr. Isihara admitted today that he had notice of the February 9th order given that he was assigned to the case as early as February 2nd. He received the February 9th order by e-mail, and he was notified of the Court's order once again by petitioner's counsel on February 12th through her e-mail. He also admits that he has done nothing on this case until this morning.

Finally, there's indisputably a continuing violation of the order as petitioner has not been returned all of his property, notwithstanding the Government's and Mr. Isihara's failure to ensure compliance with my order.

The Government's only argument against a finding of contempt is the assertion that the Government's failure to comply was not intentional or willful, but, rather, because of understaffing and high caseloads. But willfulness is not a requirement to impose coercive civil contempt sanctions. More to the point, the Government's understaffing and high caseload is a problem of its own making and absolutely does not justify flagrant disobedience of court orders.

Having found that civil contempt is appropriate, the burden shifts to the Government to show that it is unable to comply. The Government has not met that burden.

In crafting a contempt sanction, the Court must consider three factors:

First, the character and magnitude of the harm.

Second, the probable effectiveness of any suggested sanction in bringing about the desired result.

And, third, the amount of the Government and, specifically, the Special Assistant U.S. Attorney Ishihara's financial resources and the consequent seriousness of the burden to that particular party.

In weighing those factors, the Court determines that imposing on Mr. Isihara a $500 fine for each day that petitioner does not have his ID documents in hand is appropriate and constitutes the least restrictive sanction to ensure compliance with the Court's order. That fine will begin accruing tomorrow so that if petitioner's documents are returned to him tomorrow, no fine will be imposed.

The Government must file a Certificate of Compliance on the docket when petitioner, through his counsel, has received his identification documents.

So that is what I will require. I don't believe I need to do additional hand-holding on this. I think it's clear what needs to happen. Petitioner needs to get his documents immediately, and there will be a $500 sanction any day beyond tomorrow that they are not received by his attorney.

Mr. Fuller?

MR. FULLER: I don't think I have any questions or further comments. Thank you, Your Honor.

THE COURT: Okay. All right.

The Court has every level of confidence that this can get complied with, but because I haven't been given a level of confidence at today's hearing, that is why some sanction had to be imposed.

So I hope to receive a Certificate of Compliance tomorrow because that means my order will have been complied with and petitioner will be made whole by the return of those documents.

All right. We are adjourned.

(Court adjourned at 3:52 p.m.)

* * *

I, Erin D. Drost, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter to the best of my ability.

Certified by: *s/ Erin D. Drost*

Erin D. Drost, RMR-CRR

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RIGOBERTO S. J.,

Petitioner,

v.

PAMELA BONDI, *Attorney General*,
KRISTI NOEM*, Secretary, U.S.*
*Department of Homeland Security*,
TODD M. LYONS, *Acting Director of*
*Immigration and Customs Enforcement*,
DAVID EASTERWOOD, *Acting Director,*
*St. Paul Field Office Immigration and*
*Customs Enforcement*, and WARDEN,
*ERO El Paso Camp East Montana, El*
*Paso, Texas*,

Respondents.

Case No. 26-cv-957 (LMP/JFD)

**ORDER**

Respondents (the "Government") have filed a declaration of compliance attesting that it has returned Petitioner Rigoberto S. J.'s property to him on February 19, 2026. *See* ECF No. 21. In accordance with the Court's February 18, 2026 order, Special Assistant U.S. Attorney ("SAUSA") Matthew Isihara has purged his contempt, so no fines will be imposed on him.

So, how did we get here? It began on February 2, 2026, when Rigoberto S. J. filed for a writ of habeas corpus. That same day, the Court entered an order requiring the Government to respond to Rigoberto S. J.'s petition by February 5, 2026. ECF No. 3; *see* 28 U.S.C. § 2243 (providing that a response to a writ for habeas corpus "shall be returned within three days"). That deadline came and went without a response from the

**Add.13**

Government.  Therefore, on February 9, the Court granted Rigoberto S. J.'s petition, ordered him released "in Minnesota" by February 13, required the Government to "return all property to him," and ordered the Government to file a status update no later than 3:00 p.m. on February 17 certifying compliance with the order.  ECF No. 5 at 3.

None of that happened.  Instead, Rigoberto S. J.'s counsel (not the Government) informed the Court on February 17 (after the Government's deadline had passed) that Rigoberto S. J. had been released on February 12 *in Texas* (not Minnesota), and that the Government had kept his identity documents (specifically, his Minnesota Driver's License, Minnesota Instruction Permit, and Mexican Consular ID card).  ECF No. 8.  Because Rigoberto S. J. had been released in a state unknown to him without any identification, he spent the night in a shelter.  *Id.* at 1.  The next day, his counsel (not the Government) arranged for his return to Minnesota using donated flight miles.  *Id.*  Rigoberto S. J.'s counsel informed the Court of all of her efforts to get the Government to comply with the Court's orders.  ECF Nos. 8, 10-1, 10-2, 10-3.

On February 17, the Court set a hearing for the afternoon of February 18 and ordered the Government to show cause why it should not be held in contempt for failing to comply with multiple aspects of its February 9 order.  ECF No. 9.  The Court also ordered a representative of ICE to appear "who had notice of the Court's February 9 Order and is responsible for Petitioner's custody, property, and release."  *Id.* at 2.

At the show-cause hearing, SAUSA Isihara and Assistant U.S. Attorney ("AUSA") David Fuller appeared for the Government.  SAUSA Isihara was the Government attorney assigned to this case; AUSA Fuller is the current Civil Chief of the U.S. Attorney's Office.

Scott Ladwig, a Deputy Field Office Director ("DFOD") detailed to the Twin Cities, appeared on behalf of ICE. At the hearing, it quickly became apparent that the Government had no idea what had happened in this case. SAUSA Isihara and AUSA Fuller referenced documents that they believed were filed in this case but never actually were. They admitted that DFOD Ladwig was not knowledgeable about Rigoberto S. J.'s case; in fact, DFOD Ladwig had only been made aware of this case on the morning of the hearing. And no one could definitively tell the Court where Rigoberto S. J.'s property was located.

SAUSA Isihara stated that he was assigned to this case on February 2. As the assigned attorney, SAUSA Isihara was responsible for preparing a response to the petition by February 5. He did not do so. This led to the Court granting Rigoberto S. J.'s petition, as the failure to respond forfeited any objection the Government might have had to Rigoberto S. J.'s request for relief. ECF No. 5. SAUSA Isihara admitted that he timely learned of the Court's February 9 order granting the petition when paralegals from the U.S. Attorney's Office sent him the order. But he failed to notify ICE of the Court's order, as he explained would have been the normal protocol, or to take any steps to cause the Government to comply with it.

His next interaction with this case came on February 12. At that point, Rigoberto S. J. had been unlawfully released in Texas. Rigoberto S. J.'s counsel emailed SAUSA Isihara about the Court's February 9 order and asked him to help get Rigoberto S. J. transferred back to Minnesota. ECF No. 10-3 at 1–3. He responded within minutes that "I have a few urgent matters I need to close the loop on. I'll circle back with you later this afternoon." *See id.* at 1. SAUSA Isihara never followed up.

Rigoberto S. J.'s counsel again contacted SAUSA Isihara on February 16, 2026, to inform him that Rigoberto S. J. had been released without his property and to inquire about how Rigoberto S. J. could get his property returned. *Id.* SAUSA Isihara never responded, nor took any action to look into the matter.

SAUSA Isihara admitted that the first time he did *any* substantive work on Rigoberto S. J.'s case was on the morning of February 18, while preparing for the show-cause hearing. As of the time of that hearing, SAUSA Isihara had not filed a notice of appearance in the case. Consequently, despite being explicitly informed of the Court's February 9 order on at least three separate occasions, SAUSA Isihara had taken no action to ensure compliance with the Court's order, notwithstanding the fact that it was his responsibility to communicate the Court's order to ICE to effectuate Rigoberto S. J.'s lawful release. In fact, had it not been for the proactive efforts of Rigoberto S. J.'s counsel to email the order directly to ICE's El Paso general "outreach" inbox, it is unclear whether Rigoberto S. J. would have been released at all.

From the evidence before the Court at the show-cause hearing, then, it appeared that SAUSA Isihara was most at fault for the Government's continued noncompliance with the Court's February 9 order.[1] SAUSA Isihara blamed his oversights on this case inadvertently "slipp[ing] through the cracks." But SAUSA Isihara had notice of this case and at least

---

[1] It is unclear whether others were also responsible for this noncompliance because the Government failed to provide a witness from ICE that had knowledge of Rigoberto S. J.'s case (which itself was in violation of the Court's February 17 order). Even after an hour-and-a-half hearing, the Court has no understanding as to who released Rigoberto S. J. in Texas, rather than Minnesota, and without his property.

three chances to remedy the issue before the show-cause hearing. And the Government offered little defense to avoid contempt. Rather, the Government asked the Court to exercise its "discretion" and "good graces" based on the understaffing and oversized caseloads in the U.S. Attorney's Office. But since the beginning of Operation Metro Surge, the Government has offered that excuse to this Court again,[2] and again,[3] and again[4] (and to other judges in this district again,[5] and again,[6] and again,[7] and again,[8] and again,[9] and again[10]) to excuse its oversights and disobedience of court orders in immigration habeas cases.

Incredibly, less than two weeks ago, SAUSA Isihara was ordered to appear before this Court to explain his oversights in another case. *See Juan Carlos G. A. v. Bondi,*

---

[2]    *See Silvestre R. C. v. Bondi*, No. 26-cv-436 (LMP/JFD), ECF No. 17 (D. Minn. Jan. 28, 2026).

[3]    *See Juan Carlos G. A. v. Bondi*, No. 26-cv-941 (LMP/SGE), ECF No. 15 (D. Minn. Feb. 9, 2026).

[4]    *See Eliseo M. M. v. Noem*, No. 26-cv-255 (LMP/LIB), ECF No. 9 at 2 (D. Minn. filed Jan. 30, 2026).

[5]    *See Oscar T.-C. v. Bondi*, No. 26-cv-167 (JWB/JFD), ECF No. 34 at 2 (D. Minn. filed Feb. 3, 2026).

[6]    *See Francisco Z. G. v. Bondi*, No. 26-cv-722 (JMB/ECW), ECF No. 10 at 2 (D. Minn. filed Jan. 30, 2026).

[7]    *See Estefany J. S. v. Bondi*, No. 26-cv-216 (JWB/SGE), ECF No. 13 at 2 (D. Minn. filed Jan. 14, 2026).

[8]    *See Franklin Ismael G. R. v. Bondi*, No. 26-cv-567 (DWF/DTS), ECF No. 11 at 1 (D. Minn. filed Feb. 2, 2026).

[9]    *See Maria Mercedes T. D. v. Easterwood*, No. 26-cv-1269 (ECT/SGE), ECF No. 7 at 1 (D. Minn. filed Feb. 12, 2026).

[10]    *See Angel Johan A. S. v. Lyons*, No. 26-cv-777 (SRN/ECW), ECF No. 6 at 1 (D. Minn. filed Feb. 2, 2026).

No. 26-cv-941 (LMP/SGE), ECF No. 15 (D. Minn. Feb. 9, 2026). Like here, SAUSA Isihara also blamed certain oversights on resource constraints within the U.S. Attorney's Office, asserting that given the massive volume of individuals being detained and transported between Minnesota and other states, it had been difficult for the U.S. Attorney's Office to keep up with the transport of individuals, to be situationally aware as to where individuals are, and to even keep ICE updated on court orders. The Court nevertheless reminded SAUSA Isihara of the importance of timely compliance with the Court's orders.

This Court has been exceedingly patient with the U.S. Attorney's Office and has granted its attorneys (including SAUSA Isihara) grace multiple times before when disobedience came to light. But at this point, the refrain of "understaffing" and "too many cases" has worn out its welcome, particularly when it comes at the expense of individual rights. This Court would never allow a private attorney or litigant to rely on an "I'm too busy" excuse to justify disobedience of a court order. The Government is no different. *See Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

Because the Government failed to offer any acceptable defense to its conduct, the Court found SAUSA Isihara in civil contempt of court. SAUSA Isihara had notice of the Court's clear and specific February 9 order but took no steps to comply. ECF No. 17; *see Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1223 (8th Cir. 2006). SAUSA Isihara also made no argument that he was unable to comply with the Court's order. Accordingly, civil contempt sanctions were appropriate. After weighing (1) the character and magnitude

of the harm, (2) the probable effectiveness of a sanction in bringing about compliance with the Court's order, and (3) the financial resources and the consequent seriousness of the burden to the parties, the Court on February 18 imposed a $500 daily fine for each day after February 19 that Rigoberto S. J. was without his identification documents. *See Nowotny*, 470 F.3d at 1224; *see also Faegre & Benson, LLP v. Purdy*, 367 F. Supp. 2d 1238, 1249–50 (D. Minn. 2005) (imposing $500 daily contempt fine on private litigant who violated the court's order prohibiting tortious appropriation of another's identity).

As an alumna of the U.S. Attorney's Office for this District, this Court has immense respect for the dedicated attorneys of that office who live out its vital mission of doing justice. But it has become painfully clear over the past several months that the attorneys working on immigration habeas cases lack the basis resources and, in some cases, training[11] necessary to comply with judicial orders. The inability of the U.S. Attorney's Office to fulfill its duty to ensure compliance with judicial orders has real consequences on real human beings: petitioners are unlawfully left stranded thousands of miles away from Minnesota without their property (that is, if the petitioner is even timely released). Ultimately, staffing and resource allocation at the U.S. Attorney's Office is firmly within the Executive's control. But it is this Court's business to ensure that its orders are obeyed and not ignored. Administrative burden has never been a reason to sacrifice the constitutional and statutory rights of individuals, *see Stanley v. Illinois*, 405 U.S. 645, 656–

---

[11] SAUSA Isihara stated at the show-cause hearing that prior to joining the U.S. Attorney's Office as a SAUSA last month, he had not practiced in federal court. Since joining the U.S. Attorney's Office, he has been assigned nearly 130 cases.

**Add.19**

58 (1972), and this Court is not about to go down that road now. To do so would essentially allow the federal government to dictate when it is convenient for it to respect the rights of individuals—citizens and noncitizens alike.

One may wonder: why does it matter if the Government failed to return some identification documents? Federal courts have long recognized that identification documents are not trivial pieces of paper, but instruments of liberty and personhood. As the Supreme Court has explained, the possession of a driver's license "may become essential in the pursuit of a livelihood." *Bell v. Burson*, 402 U.S. 535, 539 (1971). Any Minnesotan who relies on a car to get to work, run errands, and take their kids to school certainly knows this to be the case. And having one's identification documents is central to modern life: without them, a person may be unable to work, to travel, to rent a home, to access medical care, to open or access a bank account, or even to prove who they are to the Government.[12] Here, the Government dropped Rigoberto S. J. into a city unknown to him without the one thing he would generally need to secure lodging and travel home: his ID.

So, where do we go from here? A final few words to SAUSAs and AUSAs appearing before this Court in immigration habeas cases. The Court empathizes with the challenging situation they are in. But going forward, the goal should be "100% compliance with judicial orders." *Kumar v. Soto*, No. 26-cv-777 (MEF)(AME), 2026 WL 457398,

---

[12] That is not to say that the Government is categorically barred from retaining an immigrant detainee's identification documents. The Government is free to argue that some regulatory or statutory provision authorizes them to do so. *Cf. Silvestre R. C. v. Bondi*, No. 26-cv-386 (LMP/JFD), ECF No. 18 (D. Minn. Jan. 28, 2026). The Government did not do so here (indeed, it provided no response to the petition), so it must abide by the Court's order requiring the return of Rigoberto S. J.'s property.

at *2 (D.N.J. Feb. 17, 2026).  If, however, a SAUSA or AUSA becomes aware that a judicial order was or is about to be violated, the SAUSA or AUSA should promptly explain to the Court what is happening, the reason for the violation, and the particular steps that the SAUSA or AUSA is taking to fix it.  The Court will look favorably on such submissions and will generally refrain from imposing sanctions when it appears that the SAUSA or AUSA is taking appropriate corrective action to ensure compliance.  What the Court will not tolerate is what happened here: disobedience and radio silence from the Government.

Dated: February 20, 2026                    _s/Laura M. Provinzino_
                                            Laura M. Provinzino
                                            United States District Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2026, I electronically filed the foregoing addendum with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

_s/ Jaynie Lilley_
JAYNIE LILLEY