No. 26-1327

# In the
# United States Court of Appeals
## for the Eighth Circuit

———————————

RIGOBERTO SOTO JIMENEZ,

*Petitioner - Appellee*

*v.*

TODD BLANCHE, ACTING ATTORNEY GENERAL, ET AL.

*Respondents*

———————————

MATTHEW ISIHARA

*Appellant*

———————————

Appeal from the United States District Court
for the District of Minnesota
No. 0:26-cv-00957-LMP

———————————

## CORRECTED AMICUS BRIEF OF COURT-APPOINTED COUNSEL
———————————

Jeffrey P. Justman
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
T: (612) 766-7000
F: (612) 766-1600
E: jeff.justman@faegredrinker.com
*Court-appointed Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................iii

STATEMENT OF IDENTITY OF AMICUS CURIAE ...........................................- 1 -

INTRODUCTION AND STATEMENT REGARDING ORAL
ARGUMENT ..........................................................................................................- 2 -

FACTUAL BACKGROUND ...................................................................................- 3 -

    A.    ICE detains Petitioner who then seeks, and secures, an order
       requiring him to be released in Minnesota with his property. ..............- 3 -

    B.    The district court holds a contempt hearing, and Appellant admits
       he dropped the ball and caused ICE's non-compliance. ........................- 3 -

    C.    The district court holds a break in the contempt hearing and then
       issues its contempt findings without any objections from
       Appellant. .........................................................................................- 7 -

    D.    Petitioner's property is returned the day after the contempt
       hearing, and the district court purges the contempt sanction...............- 8 -

ARGUMENT .........................................................................................................- 9 -

I.    This Dispute is Not Justiciable Because Appellant Purged the Contempt. ...- 9 -

    A.    The appeal is moot. .........................................................................- 9 -

    B.    Appellant lacks standing. ................................................................ - 11 -

II.   Appellant Forfeited Almost All Arguments On Appeal By Failing To
    Raise Them Before The District Court.......................................................... - 13 -

III.  The Court's Order Was Within its Contempt Authority. .............................. - 16 -

    A.    District courts have broad contempt powers.....................................- 16 -

    B.    Civil contempt authority reaches attorney action or inaction that
       frustrates compliance with court orders.............................................. - 17 -

    C.    The district court did not abuse its discretion in sanctioning
       Appellant, because Appellant's inaction frustrated, and was the
       cause of, noncompliance with the February 9 Order......................... - 20 -

    D.    Appellant's criticisms of the contempt sanction lack merit. .............. - 22 -

i

Appellate Case: 26-1327    Page: 2    Date Filed: 06/04/2026 Entry ID: 5647614

1. The district court's sanction was for Appellant's noncompliance, not ICE's. ........................................................ - 22 -

2. The difficult circumstances Appellant faced at the time are no reason to vacate the contempt order. ................................... - 25 -

3. That Petitioner's counsel notified an ICE email box does not excuse Appellant's inaction. ............................................... - 25 -

4. Nothing unique to government attorneys generally, or U.S. Attorneys in particular, justifies different application of civil contempt principles. .................................................................. - 26 -

E. Notice of the contempt proceedings satisfied due process. ............... - 28 -

IV. Appellant Has Not Satisfied The Requirements For A Writ Of Mandamus. ............................................................................................ - 30 -

CONCLUSION ............................................................................................... - 31 -

Appellate Case: 26-1327    Page: 3    Date Filed: 06/04/2026 Entry ID: 5647614

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Baker Grp., L.C. v. Burlington N. & Santa Fe Ry. Co.*,
   451 F.3d 484 (8th Cir. 2006) ...................................................................................12

*Berger v. United States*,
   295 U.S. 78 (1935) ...............................................................................................27

*Bessette v. W.B. Conkey Co.*,
   194 U.S. 324 (1904) .............................................................................................16

*Carter v. City of Memphis*,
   636 F.2d 159 (6th Cir. 1980) ......................................................................... 19, 21

*Cheney v. U.S. Dist. Ct. for D.C.*,
   542 U.S. 367 (2004) .............................................................................................30

*Contempt Finding in U.S. v. Stevens*,
   744 F. Supp. 2d 253 (D.D.C. 2010) ...................................................18, 19, 20, 21, 27

*Couts v. United States*,
   249 F. 595 (8th Cir. 1918) ...................................................................................13

*F.T.C. v. Neiswonger*,
   580 F.3d 769 (8th Cir. 2009) ..............................................................................16

*F.T.C. v. Stroiman*,
   428 F.2d 808 (8th Cir. 1970) ................................................................................9

*Gompers v. Bucks Stove & Range Co.*,
   221 U.S. 418 (1911) ...................................................................................... 16, 24

*Hertz v. United States*,
   18 F.2d 52 (8th Cir. 1927) ...................................................................................18

*In re Carter*,
   691 F.2d 390 (8th Cir. 1982) ...............................................................................19

*In re D.H. Overmyer Telecasting Co.*,
   30 B.R. 755 (Bankr. N.D. Ohio 1983) .................................................................19

Appellate Case: 26-1327   Page: 4   Date Filed: 06/04/2026 Entry ID: 5647614

*In re Daymark Realty Advisors, Inc.,*
2022 WL 703963 (11th Cir. Mar. 9, 2022)......................................................20

*In re Dellinger,*
461 F.2d 389 (7th Cir. 1972).........................................................................18

*In re Grand Jury Procs.,*
875 F.2d 927 (1st Cir. 1989)...............................................................14, 22, 28

*In re Grand Jury Subpoena Duces Tecum,*
955 F.2d 670 (11th Cir. 1992)..........................................................................9

*In re Johns-Manville Corp.,*
26 B.R. 919 (Bankr. S.D.N.Y. 1983)...............................................................20

*In re Kemp,*
894 F.3d 900 (8th Cir. 2018)..........................................................................30

*In re McGregory,*
223 F. App'x 530 (8th Cir. 2007) ....................................................................10

*In re Sanford Law Firm,*
106 F.4th 706 (8th Cir. 2024)..........................................................................29

*In re South Dakota,*
692 F.2d 1158 (8th Cir. 1982).........................................................................30

*In re Under Seal,*
749 F.3d 276 (4th Cir. 2014) ..........................................................................14

*In re Weeks,*
570 F.2d 244 (8th Cir. 1978) ..........................................................................24

*In re Williams,*
156 F.3d 86 (1st Cir. 1998).............................................................................12

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
512 U.S. 821 (1994) ................................................................................17, 28

*Maness v. Meyers,*
419 U.S. 449 (1975).......................................................................................18

*Marshall v. Whittaker Corp.,*
610 F.2d 1141 (3d Cir. 1979) .........................................................................10

Appellate Case: 26-1327     Page: 5     Date Filed: 06/04/2026 Entry ID: 5647614

*McComb v. Jacksonville Paper Co.*,
   336 U.S. 187 (1949) ........................................................................25

*McDonald's Corp. v. Victory Invs.*,
   727 F.2d 82 (3d Cir. 1984)........................................................ 10, 11

*McNaught v. Nolen*,
   76 F.4th 764 (8th Cir. 2023)...................................................... 11, 12

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
   2025 WL 2374881 (S.D.N.Y. Aug. 15, 2025)........................................ 19, 23

*RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC*,
   718 F.3d 1308 (11th Cir. 2013)..............................................................10

*Roadway Express, Inc. v. Piper*,
   447 U.S. 752 (1980) ........................................................................17

*S.E.C. v. Hickey*,
   322 F.3d 1123 (9th Cir. 2003)..............................................................10

*S.E.C. v. Hyatt*,
   621 F.3d 687 (7th Cir. 2010) ...................................................... 28, 29

*Shea v. Donohoe Constr. Co.*,
   795 F.2d 1071 (D.C. Cir. 1986) ...........................................................19

*St. Pierre v. United States*,
   319 U.S. 41 (1943) ............................................................... 9, 10

*United States v. Chavarria-Ortiz*,
   828 F.3d 668 (8th Cir. 2016) ..............................................................13

*United States v. Coulton*,
   594 F. App'x 563 (11th Cir. 2014) .........................................................14

*United States v. Hernandez*,
   771 F.3d 707 (10th Cir. 2014).............................................................14

*United States v. Lespier*,
   558 F.2d 624 (1st Cir. 1977)..............................................................27

*United States v. Onu*,
   730 F.2d 253 (5th Cir. 1984)..............................................................27

Appellate Case: 26-1327     Page: 6     Date Filed: 06/04/2026 Entry ID: 5647614

*United States v. Open Access Tech. Int'l, Inc.*,
   527 F. Supp. 2d 910 (D. Minn. 2007) ..................................................17

*United States v. Paccione*,
   964 F.2d 1269 (2d Cir. 1992) ............................................................10

*United States v. Pirani*,
   406 F.3d 543 (8th Cir. 2005) .............................................................13

*United States v. Powers*,
   629 F.2d 619 (9th Cir. 1980) .............................................................28

*United States v. United Mine Workers of Am.*,
   330 U.S. 258 (1947) ...........................................................................17

*United States v. Watson Chapel Sch. Dist. No. 24*,
   446 F.2d 933 (8th Cir. 1971) ...............................................................9

*Warnock v. Archer*,
   443 F.3d 954 (8th Cir. 2006) .............................................................16

*Wiser v. Wayne Farms*,
   411 F.3d 923 (8th Cir. 2005) .............................................................13

*Young v. United States ex rel. Vuitton et Fils S.A.*,
   481 U.S. 787 (1987) ...........................................................16, 17, 25

## Federal Statutes

28 U.S.C. § 530B(a) ..................................................................................27

28 U.S.C. § 1927 ................................................................................. 20, 28

## Rules

8th Cir. R. 35A(2) ............................................................................... 20, 28

Fed. R. App. 21 .........................................................................................30

D. Minn. R. 83.5(e) .............................................................................. 5, 29

Minn. R. Prof. Conduct 1.1, 1.3, 1.4 ......................................................26

Appellate Case: 26-1327   Page: 7   Date Filed: 06/04/2026 Entry ID: 5647614

## STATEMENT OF IDENTITY OF AMICUS CURIAE

The Court appointed Jeffrey P. Justman as amicus curiae ("Amicus") in this case. Amicus is a 2009 graduate of the University of Minnesota Law School. Upon graduation, Amicus clerked at this Court for then-Chief Judge James B. Loken (2009-2010) and for the Hon. Diana E. Murphy (2010-2011).

Amicus then went into private practice for the law firm of Faegre & Benson LLP and its successor firms. Amicus is now a partner at Faegre Drinker Biddle & Reath LLP, whose practice focuses on appeals, among other matters. Since 2011, Amicus has participated in dozens of appeals before this Court through briefing, argument, and otherwise. Amicus is a past president of the Eighth Circuit Bar Association (2021) and is a co-editor of the Eighth Circuit appellate practice manual.

Appellate Case: 26-1327    Page: 8    Date Filed: 06/04/2026 Entry ID: 5647614

## INTRODUCTION AND STATEMENT REGARDING ORAL ARGUMENT

This appeal concerns a district court's power to sanction a lawyer who fails to do a lawyer's most basic job: share court orders with the lawyer's client.

In the case below, Special Assistant United States Attorney Matthew Isihara ("Appellant") "personally dropped the ball" when he failed to share the district court's order that Immigration and Customs Enforcement (ICE) release petitioner Rigoberto Soto Jimenez ("Petitioner") in Minnesota with property (including legal identification papers) taken by ICE. (2/18/2022 Hrg. Tr. ("Tr.") at 45:10–20.) That failure caused Petitioner to be released in Texas without his property. At a contempt hearing, Appellant took "full responsibility for the portions I contributed to." (*Id.*) The district court made factual findings that Appellant's failures caused non-compliance with its order, and sanctioned Appellant $500 per day for each day Petitioner "does not have his ID documents in hand." (*Id.* at 74:10–16.) Thankfully, Petitioner's property was returned, the contempt sanction was purged, and Appellant paid no fine.

On appeal, Appellant disclaims responsibility and argues that no contempt sanction was proper because non-compliance with the district court's order was "not attributable to any action or inaction by Mr. Isihara." (Opening.Br.2–3.) That and other arguments in the Opening Brief were not made below, and fight clearly supported factual findings from the district court. This Court should either affirm, or dismiss the appeal for lack of jurisdiction as Petitioner argued by pre-briefing motion. Amicus would be happy to participate in oral argument if the Court orders it.

- 2 -

# FACTUAL BACKGROUND

**A.     ICE detains Petitioner, who then seeks, and secures, an order requiring him to be released in Minnesota with his property.**

On January 14, 2026, U.S. immigration officials arrested and detained Petitioner. (Appellant's Addendum ("Add.") 1.; R. Doc. 5 at 1.) On February 2, 2026, Petitioner sought emergency habeas relief. The Government never responded, so the district court granted the petition. (Add.3.; R. Doc. 5 at 3) (the "February 9 Order").

The February 9 Order imposed three conditions on the Government: (1) "release [Petitioner] from custody in Minnesota" by February 13, 2026; (2) "return all property to him"; and (3) "file a status report certifying its compliance with [the February 9 Order] by no later than 3:00 p.m., on Tuesday, February 17, 2026." (*Id.*)

On February 17, 2026, Petitioner's counsel filed a letter explaining that, while he had been released on time, Petitioner was released in Texas, not Minnesota, and without his identity documents. (*Id.*; Add.14; R. Doc. 23. at 2.)

**B.     The district court holds a contempt hearing, and Appellant admits he dropped the ball and caused ICE's non-compliance.**

The district court then issued an Order to Show Cause. (R. Doc. 9.) The court set a February 18 hearing "at which the Government must show cause, if any there be, why it should not be held in contempt for (1) failing to release Petitioner in Minnesota, as required by the Court's February 9 Order, (2) failing to return Petitioner's property to him." (*Id.* at 1.)

Appellate Case: 26-1327     Page: 10     Date Filed: 06/04/2026 Entry ID: 5647614

At the hearing, two attorneys appeared for the Government: David Fuller, the acting civil chief for the U.S. Attorney's Office in Minnesota, and Appellant.

The district court opened the hearing by identifying "at least three clear violations of my February 9th order." (Tr. 5:23–24.) First, Petitioner "was released in Texas and not in Minnesota," requiring "him to have to stay in a shelter overnight, to find his own place to stay, and for his attorney to then be able to find a flight back for him the following day." (*Id.* at 5:25–6:7.) Second, Petitioner "was released without any of his identification documents." (*Id.* at 6:9–13.) Third, the Government did not file any status report. (*Id.* at 6:17–21.)

Petitioner's counsel spoke first. She explained that she sent the February 9 Order to the general email inbox for the El Paso ICE Field Office (*id.* at 7:8–10) and also contacted Appellant to explain that her client had been released in Texas without identification documents. (*Id.* at 12:14–17.) Appellant replied, "Let me get back to you in a bit. I have a few urgent matters I need to close the loop on. I'll circle back with you later this afternoon." (*Id.* at 12:22–25.) That did not happen.

Mr. Fuller spoke next. He conceded that "[t]here certainly was a downfall in this case." (*Id.* at 16:22–25.) The district court noted the Government's non-compliance with returning Petitioner to Minnesota, with his documents. (*Id.* at 17:7–14.) Mr. Fuller replied, "I do think that, at a certain level, this matter fell through the cracks." (*Id.* at 17:22–23.)

- 4 -

The district court spoke with Appellant next. It said: "Mr. Isihara, we have met before in court, and I recall telling you it was really important for the Government to file response to status updates because that's the way the Court can get some reassurance of whether there's been compliance or not[.]" (*Id.* at 23:8–13.) Appellant said: "to be honest, Your Honor, I believe this—this slipped through the cracks." (*Id.* at 24:6–7.) He further stated, "I think, unfortunately, this was one instance in which, to be candid, the ball was dropped and—on my part, and I take responsibility for not forwarding the order immediately to [ICE's Office of the Principal Legal Advisor (OPLA)], and then the OPLA team not forwarding it to [ICE's Office of Enforcement and Removal Operations (ERO)]." (*Id.* at 25:8–12.) Appellant admitted receiving notice of the February 9 Order from a paralegal, who told him "to send it to OPLA." (*Id.* at 26:19–21.) He took "no affirmative steps" after receiving that notice. (*Id.* at 27:1–4.) Appellant admitted that 9:45 a.m. the morning of the hearing was the first time he forwarded the February 9 Order to OPLA. (*Id.* at 30:5–11, 47:1–4.)

Return of Petitioner's property was the next topic. Appellant "took responsibility for not having conveyed this information promptly and for this—this unfortunate situation which we're now in. And I asked them to maybe assist me with looking into the—just return of property and getting this done as soon as possible." (*Id.* at 31:1–5.)

After discussing other matters, including Appellant's failure to enter an appearance, *see* D. Minn. R. 83.5(e), or file a status report, the district court asked Appellant, "do you believe how the Government has litigated this is up to the standards and

- 5 -

acceptable for the U.S. Attorney's Office?" (Tr. 45:6–9.) Appellant replied, "Your Honor, bluntly, in this case, no, and I—I concede that I personally dropped the ball in this case." (*Id.* at 45:10–12.) Appellant took "full responsibility for the portions I contributed to." (*Id.* at 45:19–20.)

The district court then asked Appellant, "Why should I not hold you in contempt?" (*Id.* at 45:23.) Appellant responded that he thought contempt was reserved for situations of acting with "total indifference and there was a total deviation from the expected standard of conduct," but here, "there wasn't any willful defiance of the court orders." (*Id.* at 45:24–46:6.) When the court said that it saw "no effort being made by the U.S. Attorney's Office until 9:45 [a.m.] today," Appellant conceded that "there weren't any concrete, tangible steps being taken" before then. (*Id.* at 47:1–4.)

The final witness was ICE Deputy Field Office Director Ladwig. He testified that the normal protocols were not followed in the case, including the normal chain of communication within ICE for explaining how a detainee would be released with his property and file. (*Id.* at 50:8–10, 50:20–22, 51:5–7, 59:24–60:6.) Here, that normal process did not occur. (*Id.* at 51:5–11.) Ladwig had no update on the status of Petitioner's property because he "was notified about the property issue about five minutes prior to the hearing." (*Id.* at 56:13–15, 52:8–10, 59:10–12.)

Appellate Case: 26-1327     Page: 13     Date Filed: 06/04/2026 Entry ID: 5647614

**C. The district court holds a break in the contempt hearing and then issues its contempt findings without any objections from Appellant.**

After the court called for a break in the hearing, Mr. Fuller requested permission, if the court was planning to "make an oral finding or a conclusion as to contempt," to be heard again. (*Id.* at 63:17–22.) The court invited both Mr. Fuller and Appellant to speak again. (*Id.* at 67:9–10, 68:16–17.) Mr. Fuller explained that "this is the worst-case scenario," but "in the vast majority of cases," attorneys from the U.S. Attorney's Office were "doing a very good job." (*Id.* at 68:1–6.) Appellant explained that he was "sincerely apologetic," acknowledged that he made a "serious error," and said he felt "enormous guilt." (*Id.* at 68:18–20, 69:17–21.)

The Court then issued its findings on the record, which included the following:

- Appellant "admitted today that he had notice of the February 9th order given that he was assigned to the case as early as February 2nd." (*Id.* at 73:3–5.)

- Appellant "admits that he has done nothing on this case until this morning." (*Id.* at 73:8–9.)

- Appellant's "noncompliance with the Court's February 9th order" made him "primarily responsible" for Petitioner's not having received his property. (*Id.* at 72:14–19.)

The district court thus found that, "[b]ased on everything I've heard today, and recognizing that I have given the Government a chance here, I have little confidence that petitioner's property will be returned to him absent some sanction." (*Id.* at 72:10–13.) "Therefore," the court held the government "in civil contempt of court," and the

Appellate Case: 26-1327    Page: 14    Date Filed: 06/04/2026 Entry ID: 5647614

court further "impose[d] civil contempt sanctions on Matthew Isihara as it appears that he, based on the evidence before the Court at this hearing, is primarily responsible for the ongoing noncompliance with the Court's February 9th order." (*Id.* at 72:14–19.) Weighing the pertinent contempt factors, the court imposed a $500 fine to Appellant for each day the Petitioner did not have his identification documents. (*Id.* at 74:10–14.) The court determined that the fine would begin accruing the day after the hearing "so that if petitioner's documents are returned to him tomorrow, no fine will be imposed." (*Id.* at 74:14–16.)

The Court did not immediately adjourn the hearing. Instead, it invited any questions or comments from Mr. Fuller, who said he did not have anything further. (*Id.* at 75:1–3.) Neither Mr. Fuller nor Appellant objected to the court's personal-capacity coercive contempt order at the time of the hearing or thereafter.

### D. Petitioner's property is returned the day after the contempt hearing, and the district court purges the contempt sanction.

The day after the hearing, February 19, the Government attested that it returned Petitioner's property. (Add.13; R. Doc. 23 at 1.) The court therefore held that "Matthew Isihara has purged his contempt, so no fines will be imposed on him." (*Id.*)

Within days, Appellant appealed the contempt sanction. Petitioner moved to dismiss for lack of jurisdiction, and a motions panel of the Court denied the motion and appointed Amicus to defend the sanctions order and respond to Appellant's opening brief.

- 8 -

**ARGUMENT**

The Court should either dismiss this appeal for lack of jurisdiction (for reasons briefed by Petitioner's motion to dismiss and summarized below), or it should affirm.

## I. This Dispute is Not Justiciable Because Appellant Purged the Contempt.

As a threshold matter, this Court should dismiss the appeal because the district court's order purging Appellant's contempt makes this appeal nonjusticiable.

### A. The appeal is moot.

"A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it." *St. Pierre v. United States*, 319 U.S. 41, 42–43 (1943). Appeals from contempt orders are moot once the contempt has been purged. *See United States v. Watson Chapel Sch. Dist. No. 24*, 446 F.2d 933, 938 (8th Cir. 1971) (where parties "purged themselves of any contempt citation, and the sanctions have been lifted," the matter is "not reviewable" by this Court "since the issues are moot"). "Under these circumstances, there is no justiciable controversy pending before this court and the appeal must be dismissed for lack of jurisdiction." *Id.* Once a party complies with a court's order to avoid a civil contempt fine, "there exist[s] no pending controversy" for this court to decide. *F.T.C. v. Stroiman*, 428 F.2d 808, 809 (8th Cir. 1970).[1]

---

[1] Other circuits have similarly held that purging contempt sanctions renders an appeal of the sanction moot. *See In re Grand Jury Subpoena Duces Tecum*, 955 F.2d 670, 672 (11th Cir. 1992) (collecting cases and holding: "In the context of purely coercive civil

- 9 -

Petitioner cited these authorities in moving to dismiss, and a motions panel denied the motion. As best as Amicus can discern, the potential collateral consequences of the contempt sanction (as an exception to mootness) may have been something that the motions panel considered worthy of further briefing or argument. In Amicus's view, however, the collateral consequences exception does not apply.

Consider the Supreme Court's decision in *St. Pierre.* There, the Court held that an appeal of a **criminal** contempt sanction was moot because the contemnor had already served his sentence. The Supreme Court rejected the appellant's arguments that the appeal was justiciable because the contempt "judgment may impair his credibility as witness in any future legal proceeding." 319 U.S. at 43. It reasoned: "the moral stigma of a judgment which no longer affects legal rights does not present a case or controversy for appellate review." *Id.* This Court has likewise rejected arguments against mootness by attorneys who argue about the negative collateral consequences, such as a purged order's "detrimental effect on [an attorney's] bankruptcy practice and discipline regarding his Missouri law license." *In re McGregory*, 223 F. App'x 530, 531–32 (8th Cir. 2007); *see also Marshall v. Whittaker Corp.*, 610 F.2d 1141, 1145 (3d Cir. 1979) (explaining that "purging the contempt eradicates any effect of a violation"

---

contempt, a contemnor's compliance with the district court's underlying order moots the contemnor's ability to challenge his contempt adjudication."); *United States v. Paccione*, 964 F.2d 1269, 1274 (2d Cir. 1992); *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003); *RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC*, 718 F.3d 1308, 1314 (11th Cir. 2013); *McDonald's Corp. v. Victory Invs.*, 727 F.2d 82, 85–86 (3d Cir. 1984).

Appellate Case: 26-1327   Page: 17   Date Filed: 06/04/2026 Entry ID: 5647614

because "an adjudication of civil contempt carries with it no possibility of collateral deprivations of civil rights or other specifically legal consequences"); *McDonald's*, 727 F.2d at 85–86 (rejecting argument that "embarrassment and humiliation" from purged contempt order "warrant an exception from the general principle that once purged, the contempt order is moot and cannot be reviewed").

Petitioner and Appellant thoroughly briefed the mootness issue pre-briefing, and so Amicus does not reiterate it in full here. Amicus's view is that the Supreme Court's decision in *St. Pierre* and this Court's decisions in *Watson Chapel* and *Stroiman* are on point. If this Court concludes otherwise—as it did implicitly in denying Petitioner's motion to dismiss—Amicus suggests that a published decision addressing the metes and bounds of mootness in this context would benefit the bench and bar.

### B.     Appellant lacks standing.

The mirror image of mootness is lack of standing, an equal basis for dismissal.

"The difference between standing and mootness . . . is merely one of 'time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *McNaught v. Nolen*, 76 F.4th 764, 769 (8th Cir. 2023). Standing is lacking in this appeal for two reasons: Appellant has suffered no injury, and even if he had, it would not be redressable by a decision from this Court.

Appellate Case: 26-1327     Page: 18     Date Filed: 06/04/2026 Entry ID: 5647614

With respect to the lack of injury, Appellant has (thankfully) paid no fine, and the contempt has been purged. Appellant cannot show that he has suffered an "injury in fact" that is "concrete and particularized." *Id.* (citation omitted)); *see Baker Grp., L.C. v. Burlington N. & Santa Fe Ry. Co.*, 451 F.3d 484, 491 (8th Cir. 2006); *In re Williams*, 156 F.3d 86, 91–92 (1st Cir. 1998). Appellant alludes to "collateral consequences" of the contempt order (Opening.Br.13) but does not elaborate in his appeal brief on what those consequences might be. "Naked assertions of reputational harm fall short of plausibly establishing injury." *McNaught*, 76 F.4th at 770–72 (cleaned up) (rejecting pilot's argument that "temporary suspension" would harm future employment prospects as a "permanent stain on her record" or a "continuing stigma"). Appellant's argument that the purge order unfairly "doubled down" on criticism of him (Opening.Br.3) is not enough: "appellate review of every judicial scolding of an attorney would presage 'a breathtaking expansion in appellate jurisdiction,'" *Baker Grp.*, 451 F.3d at 491 (quoting *Bolte v. Home Ins. Co.*, 744 F.2d 572, 573 (7th Cir. 1984)).

As to redressability, a decision from this Court will not redress Appellant's claimed injury. Any reputational harm stems from what he failed to do, and from having "dropped the ball" in his professional duties, not from the Court's response.[2]

---

[2] Under procedures described in sections 1-4.300, 1-4.310, and 1-4.320 of the DOJ's "Justice Manual," Appellant will likely be subject to investigation and report by the DOJ's Office of Professional Responsibility regardless of how this Court disposes of the appeal. *See* https://www.justice.gov/jm/jm-1-4000-standards-conduct (last visited May 22, 2026).

Appellate Case: 26-1327     Page: 19     Date Filed: 06/04/2026 Entry ID: 5647614

## II. Appellant Forfeited Almost All Arguments On Appeal By Failing To Raise Them Before The District Court.

Before reaching the merits, there is one other procedural problem for Appellant: nearly everything he says on appeal was never presented to the district court.

For instance, Appellant's main argument is that an attorney should not be subject to coercive civil contempt sanctions when the ability to purge the contempt is within the client's control. (*See, e.g.*, Opening.Br.3, 6, 22, 27.) That issue is worthy of briefing and judicial analysis (which Amicus addresses below); but Appellant did not raise it below—either in answering why he should not be held in civil contempt, at the end of the contempt hearing when the Court asked if there were further issues following its oral findings, or via motion for reconsideration or clarification.

When a party fails to raise an issue in the district court, it is generally forfeited on appeal. *See United States v. Chavarria-Ortiz*, 828 F.3d 668, 670–71 (8th Cir. 2016). On appeal, this Court will not reverse a district court based on an unpreserved issue unless the Appellant shows plain error. *See United States v. Pirani*, 406 F.3d 543, 549–50 (8th Cir. 2005) (en banc) (citing *United States v. Olano*, 507 U.S. 725, 732–36 (1993)); *Wiser v. Wayne Farms*, 411 F.3d 923, 927 (8th Cir. 2005) (holding "an unpreserved error in the civil context must meet at least the *Olano* standard to warrant correction").

Forfeiture principles apply equally in the contempt context—even for *criminal* contempt. *See Couts v. United States*, 249 F. 595, 596–97 (8th Cir. 1918) (affirming no plain error in criminal contempt judgment because "[t]he information was not

- 13 -

attacked in the court below," and "the alleged errors are not plain [or] of a technical character"); *In re Under Seal*, 749 F.3d 276, 285–86 (4th Cir. 2014). As other circuits have explained, forfeiture and waiver rules "take[] on added significance in the context of contempt.'" *Under Seal*, 749 F.3d at 287 (quoting *In re Bianchi*, 542 F.2d 98, 100 (1st Cir. 1976)). "'[D]enying the court of which [a party] stands in contempt the opportunity to consider the objection or remedy is in itself a contempt of [that court's] authority and an obstruction of its processes.'" *Id.*

Other circuits have applied forfeiture rules in cases that, like this one, involve contempt orders against attorneys. For example, the First Circuit affirmed a criminal contempt conviction of an Assistant U.S. Attorney in his personal capacity. *In re Grand Jury Procs.*, 875 F.2d 927, 932, 935 (1st Cir. 1989). As part of that ruling, the court held that the attorney failed to raise objections about improper notice to the district court, and found no plain error for insufficient notice. *Id.* at 931–32; *see also United States v. Hernandez*, 771 F.3d 707, 709–10 (10th Cir. 2014) (reviewing forfeited notice arguments for plain error in criminal contempt order against attorney); *United States v. Coulton*, 594 F. App'x 563, 568 (11th Cir. 2014) (affirming contempt order against attorney who "raise[d] this argument for the first time in his initial brief on appeal").

Appellant's opening brief does not state that his arguments are being presented for the first time on appeal, nor does it acknowledge the incongruity between some of his appellate arguments and his candid admissions in the district court. During the show-cause hearing, for example, Appellant explained that he "[took] responsibility

- 14 -

for not forwarding the order immediately to OPLA, and then the OPLA team not forwarding it to ERO" (Tr. 25:8–12) and took "full responsibility for the portions I contributed to." (*Id.* at 45:18–20.) Appellant's brief on appeal now appears to disclaim that responsibility. Appellant and Mr. Fuller each had opportunities to address the district court during the show-cause hearing, including opportunities to object before and after the contempt finding. Neither did.

All of this is to say: the district court would likely be surprised at reading Appellant's opening brief to this Court. Almost all of the criticisms in it were never made to the district court, and so it had no opportunity to consider them. Under the principle that district courts should not be sandbagged with new arguments on appeal, the Court should either respectfully decline to consider any argument not fairly preserved below, or consider it only under plain error review.

Finally, to the extent that Appellant might claim he lacked an opportunity to object because the "district court failed to give [Appellant] adequate notice" (Opening.Br.31), that is a problem of his own making. When the district court learned of the non-compliance with its order, it did not know who in the U.S. Attorney's office was handling the case; Appellant had entered no appearance even though he had been assigned to the case. The district court also did not know where in the chain from attorney to client the breakdown had occurred. So it gave the broadest possible notice: to "the Government." (R. Doc. 9 at 1.)

- 15 -

Appellant had ample notice and opportunity to object during the contempt hearing. When it became clear that the breakdown lay with Appellant, the district court directly asked Appellant, "Why should I not hold you in contempt?" (Tr. 45:21–23.) Again later, after examining Mr. Ladwig, the court offered Appellant a second opportunity to speak on his own behalf. (*Id.* at 68:16–69:23.) And after making specific findings, the Court gave Mr. Fuller another opportunity to speak, and he responded that he had no "questions or further comments." (*Id.* at 75:1–3.)

## III. The Court's Order Was Within its Contempt Authority.

If the Court reaches the merits, it should hold that the district court did not abuse its broad discretion in issuing a coercive contempt sanction to the attorney responsible for non-compliance with the Court's February 9 Order. *See F.T.C. v. Neiswonger*, 580 F.3d 769, 773–74 (8th Cir. 2009); *Warnock v. Archer*, 443 F.3d 954, 955 (8th Cir. 2006) (standard of review).

### A. District courts have broad contempt powers.

Federal courts have "inherent authority to initiate contempt proceedings for disobedience to their orders." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987). This authority "has been uniformly held to be necessary to . . . enable [the court] to enforce its judgments and orders." *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 333 (1904); *see Young*, 481 U.S. at 796; *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911). Thus, "while the exercise of contempt power is subject to reasonable

- 16 -

Appellate Case: 26-1327    Page: 23    Date Filed: 06/04/2026 Entry ID: 5647614

regulation, 'the attributes which inhere in that power and are inseparable from it can neither be abrogated nor rendered practically inoperative.'" *Young*, 481 U.S. at 799.

A district court may impose civil contempt sanctions to compensate parties aggrieved by contumacious conduct, or to coerce compliance with the court's orders. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947). This case falls into the second category. Conditional penalties—including daily fines—are a paradigmatic form of coercive civil contempt because they compel performance of a required act and may be purged through compliance. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994); *United States v. Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d 910, 913 (D. Minn. 2007) (ordering civil contempt fine of $5,000 per day). Coercive civil contempt is appropriate where the "contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus "'carries the keys of his prison in his own pocket.'"" *Bagwell*, 512 U.S. at 828 (quoting *Gompers*, 221 U.S. at 442).

### B. Civil contempt authority reaches attorney action or inaction that frustrates compliance with court orders.

Attorneys, no less than parties, are subject to courts' contempt authority. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980) ("The power of a court over members of its bar is at least as great as its authority over litigants."). As Appellant acknowledges, "attorneys who have failed to comply with an order directed at the attorney or to carry out a duty imposed on the attorney as an officer of the court" may

- 17 -

be subject to civil contempt. (Opening.Br.20 (citing *In re Murphy*, 560 F.2d 326, 332 (8th Cir. 1997)).) This makes sense: while attorneys cannot always control their clients' conduct, *In re Dellinger*, 461 F.2d 389, 399 (7th Cir. 1972),[3] they are responsible, as officers of the court and as their clients' primary conduit to it, for taking reasonable steps within their role to facilitate compliance with court orders. *See Hertz v. United States*, 18 F.2d 52, 55 (8th Cir. 1927) ("Attorneys are officers of the court, and owe a duty to assist in the administration of justice."). An attorney may not *completely* control the client's conduct, but the attorney plays a crucial role in *influencing* it—and may be sanctioned when that influence is not exercised. *See, e.g.*, *Maness v. Meyers*, 419 U.S. 449, 459–60 (1975) (attorney who counsels client not to comply with court order is himself subject to sanction); *Contempt Finding in U.S. v. Stevens*, 744 F. Supp. 2d 253, 262–63 (D.D.C. 2010) ("each of the senior attorneys representing the government had an obligation to comply with the Court's Order, and to ensure that their client complied," notwithstanding that the attorney was "not personally responsible for directly handing the documents to defense counsel"), *aff'd*, 663 F.3d 1270 (D.C. Cir. 2011). The necessary first step towards client compliance is to inform the client of a court's orders.

---

[3] Appellant relies on *Dellinger* to argue that "[a]n attorney has no affirmative obligation to restrain his client under pain of the contempt sanction," Opening.Br.24, but that is a red herring. Appellant was found to be in contempt not for failure to restrain ICE, but for failure to share the Court's February 9 order with ICE. Appellant's argument that an attorney can "only" be held in contempt for encouraging disruptive behavior or fanning flames, *id.*, is supported neither by *Dellinger* nor the many authorities discussed herein.

- 18 -

Appellate Case: 26-1327    Page: 25    Date Filed: 06/04/2026 Entry ID: 5647614

Contrary to a central premise of Appellant's brief, attorneys may lawfully be sanctioned when noncompliance results from the attorney's conduct rather than the client's defiance. In those cases, courts properly target the attorney's behavior rather than penalize a blameless client. *See Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1077 n.5 & 1078–79 (D.C. Cir. 1986) (holding it unjust to punish a client when sanctioning the attorney would better serve the court's goals, as "clients typically, and in most cases justifiably, rely on their attorneys to proceed with their case"); *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980) (reversing sanction against plaintiff, noting "[s]trict compliance with orders of a district court is an important duty of counsel").

Accordingly, while one hopes instances would be rare, when an attorney's conduct causes non-compliance with a court order, courts properly hold the *attorney* in contempt. *See, e.g.*, *In re Carter*, 691 F.2d 390, 391–92 (8th Cir. 1982) (affirming civil contempt order on attorney for failing to stop client from carrying out an eviction after attorney learned of restraining order); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2025 WL 2374881, at \*11–12, \*15 (S.D.N.Y. Aug. 15, 2025) (holding attorney in contempt for failing to advise client to remove counterclaim in violation of injunction); *Stevens*, 744 F. Supp. 2d at 262–63; *see also In re D.H. Overmyer Telecasting Co.*, 30 B.R. 755, 756–57 (Bankr. N.D. Ohio 1983) (holding attorney in contempt for failure to transfer records in accordance with court injunction).

That attorneys may be personally sanctioned for their own action or inaction is reflected in federal statutes, this Circuit's rules, and secondary authority. *See* 28 U.S.C.

- 19 -

Appellate Case: 26-1327     Page: 26     Date Filed: 06/04/2026 Entry ID: 5647614

§ 1927 (attorney who "multiplies the proceedings in any case unreasonably and vexatiously" may be required "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred"); 8th Cir. R. 35A(2) (authorizing costs to be assessed "personally" against attorney who files frivolous petition for rehearing en banc); Restatement (Third) of the Law Governing Lawyers § 105 (2000) (addressing lawyer liability for assisting client violations of court orders). *See Stevens*, 744 F. Supp. 2d at 262–63 (finding government attorney personally in contempt); *In re Daymark Realty Advisors, Inc.*, 2022 WL 703963, at *3 (11th Cir. Mar. 9, 2022) (sanctioning attorney for filing action in violation of preliminary injunction); *In re Johns-Manville Corp.*, 26 B.R. 919, 926 (Bankr. S.D.N.Y. 1983) (finding counsel in contempt, explaining "the contempt they have perpetrated is far worse [than their client's] because of [counsel's] role as [] an officer of the Court").

Thus, although attorneys are not guarantors of their clients' compliance, they may be personally sanctioned—including through civil contempt—when their own conduct or failure to act frustrates compliance with a court order.

**C. The district court did not abuse its discretion in sanctioning Appellant, because Appellant's inaction frustrated, and was the cause of, noncompliance with the February 9 Order.**

As in the cases discussed above, the district court properly directed its contempt order at the attorney conduct responsible for the non-compliance.

At the show-cause hearing, Appellant admitted that, despite knowing of the order, he failed to relay it to ICE through proper channels. (Tr. 25:8–12, 26:19–27:4.)

Appellate Case: 26-1327     Page: 27     Date Filed: 06/04/2026 Entry ID: 5647614

Even after Petitioner's counsel followed up and Appellant assured he would "circle back" that afternoon, he took no action. (*Id.* at 17:2–6.) Only after receiving notice of the show-cause hearing did Appellant put OPLA "on notice" of the court's order (*id.* at 30:21–31:5), yet at the hearing he had not received a reply and could not inform the court of the property's location. (*Id.* at 31:8–17.) Mr. Ladwig did not know where Petitioner's property was because he "was notified about the property issue about five minutes prior to the hearing." (*Id.* at 56:13–15, 52:8–10, 59:10–12.)

After considering relevant testimony, the district court made factual findings, supported by that testimony, that it was Appellant's inaction—failure to share the February 9 Order with anyone at ICE—that caused Petitioner not to receive his property by the deadline. The Court found that: (1) Appellant "admits that he has done nothing on this case until this morning" (*id.* at 73:8–9), and (2) "noncompliance with the Court's February 9th order" made him "primarily responsible" for Petitioner's not having received his property by the court-ordered deadline. (*Id.* at 72:14–19.) The district court's contempt order was thus based on Appellant's failures, not ICE's. (*Id.* at 73:10–13.)

Under governing precedents, and given these factual findings, the district court's contempt sanction was well within its discretion. *See Carter*, 691 F.2d at 391–92; *see also Stevens*, 744 F. Supp. 2d at 262–63. Appellant's argument to the contrary fails; at the very least, it was at least not plainly erroneous for the district court to sanction Appellant as it did.

- 21 -

## D. Appellant's criticisms of the contempt sanction lack merit.

Most of this analysis is undisputed, or at least it was below. On appeal, Appellant lodges several criticisms of the contempt sanction, each lacking merit. Because he never raised these objections below, he must show plain error—and he cannot. *See In re Grand Jury Procs.*, 875 F.2d at 931–32.

### 1. The district court's sanction was for Appellant's noncompliance, not ICE's.

Appellant's main criticism is that it was improper to sanction Appellant for ICE's noncompliance with court orders. (Opening.Br.1 ("A lawyer does not, by representing a client in district court, assume personal responsibility for the client's compliance with court orders."); *see also id.* at 3, 6, 16, 17.) Appellant's criticism misstates the record. It was not ICE's failure that caused Petitioner not to receive his property by the court-ordered deadline. It was Appellant's, as he admitted on the record. (*See* Tr. 45:18–20 (admitting he took "full responsibility for the portions I contributed to"); *id.* at 25:10–12 ("I take responsibility for not forwarding the order immediately to OPLA and then the OPLA team not forwarding it to ERO.").) Appellant's argument that there was an "absence of any connection between [his] conduct and the disposition of petitioner's possessions" (Opening.Br.3) ignores his own testimony and well-supported factual findings in the district court. And his argument that there was "no explanation" for the district court's conclusion that he bore "primary responsibility" (and that "none exists" (*see id.* at 15)) likewise ignores his own candid testimony.

- 22 -

While Appellant's Opening Brief raises an interesting academic issue about the limits of coercive civil contempt orders against attorneys when the client may control the ability to purge the contempt, that issue is not implicated here. Appellant certainly *had* the ability to influence return of Petitioner's property by communicating with ICE; he admitted that when he dropped the ball, ICE did not comply; and when he finally did communicate with ICE, Petitioner's property was immediately returned. Or to put it in Appellant's terms: if ICE carried the "keys" to purge the contempt, Appellant had the power to unlock the cell by telling ICE how to open it. The process played out as everyone hopes it would in all attorney-client representation: the profession should, and does, assume lawyers have at least *some* ability to influence their client's compliance with court orders.[4]

But what the profession, and this Court, should not accept is the argument on pages 28 to 29 of Appellant's Opening Brief, which states: "the idea that government attorneys are compelled, upon penalty of contempt, to satisfy a district court regarding the level and timeliness of their engagement with client agencies or opposing counsel is extraordinary, and this Court should flatly reject any such proposition."

---

[4] To be clear: if a lawyer shares an order with a client and the client still refuses to return property anyway, the lawyer should not be personally liable. In that scenario, the lawyer could inform the Court of his efforts to influence compliance, and that would (one hopes) purge the contempt on the lawyer and shift it to the client. *See, e.g.*, *Patsy's Brand*, 2025 WL 2374881, at *12 (rejecting attorney's argument that the disputed counterclaim "was not [his] to withdraw" to purge his contempt). The Court need not explore that scenario here, as Appellant took no steps to facilitate compliance with the February 9 Order in the first place.

- 23 -

Respectfully, the Court should not adopt a rule that would exempt attorneys—government or otherwise—from timely communicating with their clients when court orders require it. Especially when an individual's liberty is at stake.

Appellant's brief implies that because ICE held Petitioner's property and most directly controlled whether the contempt was purged, then sanctions against ICE would have been appropriate. On this record, Amicus does not understand how holding ICE in contempt for an order it never received through proper channels would be appropriate. No party can be expected to comply with what it does not know. *In re Weeks*, 570 F.2d 244, 245 n.1 (8th Cir. 1978). As it turned out, Appellant did "carr[y] the keys of his prison in his own pocket," *Gompers*, 221 U.S. at 442, because when he shared the February 9 Order with ICE, Petitioner's property was immediately returned.

Appellant's lack-of-control argument also invites an absurd logical consequence: no one could be held in contempt for non-compliance here. Appellant could not, he argues, because he lacked direct control over the property. Alternatively, ICE, though it had control over the property, could not be held responsible for an order Appellant never sent to ICE. Even to describe this pass-the-buck argument is to refute it. It would permit disobedience through inaction just as surely as through affirmative defiance, rendering any federal court's contempt power "practically inoperative." *Young*, 481 U.S. at 799.

Appellate Case: 26-1327    Page: 31    Date Filed: 06/04/2026 Entry ID: 5647614

### 2. The difficult circumstances Appellant faced at the time are no reason to vacate the contempt order.

Appellant's next explanation for noncompliance—being "caught in the crossfire of a difficult situation" (Opening.Br.1)—is understandable, but provides no basis for overturning the contempt order. There is no good-faith exception to coercive civil contempt, which need not be willful. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); 7A Fed. Proc. § 17:31 ("[W]illfulness is not an essential element of civil contempt, and its absence does not relieve a person from civil contempt." (citing *Taggart v. Lorenzen*, 587 U.S. 554 (2019))). (*See also* Tr. 73:14–22 (reciting the same).)

Appellant's related argument that even "best efforts were not always sufficient, (Opening.Br.2) lacks support in the record. Appellant admitted below that he dropped the ball in this case. Whatever might be said of Appellant's efforts generally, these were (unfortunately) not Appellant's best efforts.

### 3. That Petitioner's counsel notified an ICE email box does not excuse Appellant's inaction.

Several times throughout his brief, Appellant implies that his inaction was harmless because even though ICE did not receive the February 9 Order from *him*, an ICE field office inbox received the order from Petitioner's counsel. (*E.g.*, *id.* at 15 ("[T]he record is clear that ICE received prompt notice of the order.").) The problem with this argument is that it assumes that notice to anyone at ICE is equally good notice of ICE's specific obligations to return the Petitioner to Minnesota with his property. The record refutes that premise: ICE has procedures that require notice through

- 25 -

the proper channels. Deputy Field Officer Director Scott Ladwig testified regarding both the ordinary release process and the highly irregular circumstances of this case—where the notice came directly from Petitioner's counsel to an outreach inbox. He explained that, in the normal course, a Minnesota official would send instructions directing the detainee to be returned to Minnesota, along with the individual's property and file. (Tr. 59:24–60:6.) That did not happen because the communication was routed through the wrong channels, a breakdown that again can be traced back to Appellant's failure to communicate the February 9 Order.

### 4. Nothing unique to government attorneys generally, or U.S. Attorneys in particular, justifies different application of civil contempt principles.

Appellant (and his counsel at the Department of Justice) also argue that the district court's exercise of contempt authority "intrudes on the statutory roles of the Department of Justice, including the United States Attorney, and disregards lines of statutory authority and public accountability established by Congress." (Opening.Br.4, 16.) For at least two reasons, this argument lacks merit.

First, all attorneys are subject to minimum standards of professional conduct, including duties of competence, diligence, and prompt communication. *See* Minn. R. Prof. Conduct 1.1, 1.3, 1.4. There is no "public-lawyer exception" exempting government attorneys from those obligations, nor from personal sanctions for violating them. *See, e.g.*, 28 U.S.C. § 530B(a) ("An attorney for the Government shall be subject to State laws and rules . . . to the same extent and in the same manner as other

- 26 -

Appellate Case: 26-1327    Page: 33    Date Filed: 06/04/2026 Entry ID: 5647614

attorneys in that state."). If Appellant is arguing for special, lower standards for government attorneys, the Court should not adopt such a rule. *See Berger v. United States*, 295 U.S. 78, 88 (1935) (the "United States Attorney" represents a sovereignty whose "obligation to govern impartially is as compelling as its obligation to govern at all . . . . As such, he is in a peculiar and very definite sense the servant of the law"). As a former Assistant United States Attorney herself, the district court was well positioned to understand whether the contempt order impaired DOJ functions. (*See* Tr. 45:3–5.)

Second, Appellant was held in contempt not for ICE's actions, but for his own inaction. Requiring a lawyer to adhere to (and share with his client) federal court orders does not threaten the integrity of coordinate political branches. *See United States v. Onu*, 730 F.2d 253, 257–58 (5th Cir. 1984) (holding state senator in contempt for failing to fulfill duties as attorney after being called into legislative session); *see also Stevens*, 744 F. Supp. 2d at 262–63 (holding United States Attorney in civil contempt for failing to ensure the government complied with the court's production order, rejecting attorney's argument that she lacked "responsibility for the management of documents" and thus should not be held accountable); *United States v. Lespier*, 558 F.2d 624, 627–28 (1st Cir. 1977) (lawyer's failure to appear without giving advance notice because he was at a political conference was "clearly punishable as criminal contempt").

Appellate Case: 26-1327    Page: 34    Date Filed: 06/04/2026    Entry ID: 5647614

As a co-equal branch, this Court should reject the Executive branch's request to carve out more limited contempt rules for government attorneys.[5]

### E. Notice of the contempt proceedings satisfied due process.

Appellant's penultimate argument about a lack of notice (Opening.Br.31–33) lacks merit. Appellant received all the process he was due; and even if there were an error, it is not plain. *See In re Grand Jury Procs.*, 875 F.2d at 931–32.

Due process requires that civil contemnors "be given certain basic procedural protections before being subject to any sanction: adequate notice and an opportunity to be heard in a meaningful time and in a meaningful manner." 9A Wright & Miller Federal Practice & Procedure § 2465 (3d ed. 2026 update); *Bagwell*, 512 U.S. at 827 (civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard")*; see S.E.C. v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010) (civil contempt notice "minimally includes a requirement that 'notice be given of the time and place of hearing' on the propriety of a contempt order"); *United States v. Powers*, 629 F.2d 619, 625 (9th Cir. 1980) ("Simple notice is all that is required.").

Appellant had sufficient notice that he could be held personally in contempt. The show-cause order specified Petitioner's case, listed causes for the finding of

---

[5] Appellant's argument about the risk of contempt orders "chill[ing] vigorous advocacy" is both theoretical and unfounded. Nothing in this record shows that Appellant's advocacy for ICE was chilled by the potential for contempt. He simply dropped the ball. The contempt sanction here is no more chilling than any attorney-focused sanctions under 28 U.S.C. § 1927, this Court's Rule 35A(2), or similar authorities.

- 28 -

contempt—"(1) failing to release Petitioner in Minnesota," "(2) failing to return Petitioner's property to him," and "(3) failing to timely provide a status update to the Court" (R. Doc. 9 at 1)—and required the appearance of the "Assistant U.S. Attorney responsible for the management of the case." (*Id.* at 2 ¶ 2(a).) The fact that Appellant was not specifically named was no reason for him to conclude he might not be subject to personal sanction. It would have been unreasonable for Appellant to expect his name to appear in the order, given he had failed to appear. *But cf.* D. Minn. R. 83.5(e).

Appellants rely on *In re Sanford Law Firm*, 106 F.4th 706 (8th Cir. 2024), but *Sanford* is inapposite. There, the district court ordered a law firm, through its managing partner, to show cause why the law firm should not be held in contempt. *Id.* at 712. The law firm presented evidence to show why it should not be held in contempt, but at the end of the show-cause hearing, the court suspended the managing partner from the practice of law. This Court reversed the district court's order, explaining that the "most severe sanctions," such as those that "could leave an indelible and deleterious imprint" on an attorney's career require "clear notice as to the form of the sanction to comport with due process." *Id.* at 717–18 (cleaned up). No comparable facts occurred here. Appellant does not contend that he was unaware that he faced personal sanction before the district court issued its contempt order. (*See* Tr. 45:21–23 (asking Appellant "Why should I not hold you in contempt?").) Under applicable law, that was sufficient notice. *See Hyatt*, 621 F.3d at 694.

Appellate Case: 26-1327    Page: 36    Date Filed: 06/04/2026 Entry ID: 5647614

## IV. Appellant Has Not Satisfied The Requirements For A Writ Of Mandamus

Appellant's final argument appears focused not on his own case, but on the Government's broader concern with orders in other cases threatening various sanctions. Appellant (really, the United States) therefore asks the Court to issue "clear guidance" to district courts, and that "[t]o the extent that this Court has any concerns about its authority to issue such guidance . . . it may treat this appeal as a mandamus petition on behalf of the United States." (Opening.Br.6; *see id.* at 33–35.) For multiple reasons, the Court should not take the United States up on its suggestion.

First, the United States has not satisfied the requirements for a mandamus petition. *See* Fed. R. App. 21.

Second, the United States falls far short of the bar for this "extraordinary remedy," which is "one of 'the most potent weapons in the judicial arsenal.'" *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Will v. United States*, 389 U.S. 90, 95 (1967)). The United States has not established that it (1) "has 'no other adequate means to attain the relief he desires'"; or (2) has an "entitlement to the writ" that is "clear and indisputable." *In re Kemp*, 894 F.3d 900, 905 (8th Cir. 2018) (quoting *In re Lombardi*, 741 F.3d 888, 894 (8th Cir. 2014)). Mere legal error, even if shown, is not enough to justify mandamus. *In re South Dakota*, 692 F.2d 1158, 1160–61 (8th Cir. 1982). If the United States has problems with other court orders in other cases, it can of course seek applicable appellate relief in those cases.

Appellate Case: 26-1327    Page: 37    Date Filed: 06/04/2026 Entry ID: 5647614

## CONCLUSION

The Court should either dismiss the appeal for lack of jurisdiction, or affirm.

JUNE 2, 2026

Respectfully Submitted,

*/s/ Jeffrey P. Justman*
Jeffrey P. Justman
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 S. 7th Street
Minneapolis, Minnesota 55402
T: (612) 776-7000
F: (612) 776-1600
E: Jeff.Justman@FaegreDrinker.com

*Court-appointed Amicus Curiae*

- 31 -

# CERTIFICATE OF COMPLIANCE WITH
# TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This brief complies with the Court's May 15, 2026 order granting leave to file an amicus brief of up to 8,000 words because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 7,928 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Garamond 14 point font.

*/s/ Jeffrey P. Justman*

JUNE 2, 2026

Appellate Case: 26-1327     Page: 39     Date Filed: 06/04/2026 Entry ID: 5647614

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2026, I caused a corrected version of this brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Jeffrey P. Justman*

- 33 -

Appellate Case: 26-1327    Page: 40    Date Filed: 06/04/2026 Entry ID: 5647614